**UNITED STATES of America, ex rel. Joyce RILEY, Plaintiff,**

**v.**

**ST. LUKE'S EPISCOPAL HOSPITAL, et al., Defendants.**

#### No. CIV.A. H–94–3996.

United States District Court, S.D. Texas, Houston Division.

April 3, 2002.

Jim M. Perdue, Sr., Perdue & Clore, Houston, TX, for Joyce Riley, plaintiff.

L. Boyd Smith, Jr., Vinson and Elkins, Jeffrey B. McClure, Mayor Day Caldwell and Keeton, Solace Kirkland Southwick, Mayor Day Caldwell and Keeton, Houston, TX, Toni Hunter, Office of Attorney General, Antoinette Hunter, Office of Attorney General, Kathlyn Claire Wilson, Asst. Attorney General, Austin, TX, Keith S. Dubanevich, Garvey Schubert et al, Portland, OR, Nancy June Locke, Fulbright & Joworski, Tamara M. Madden, Hanen Alexander et al., Brian P. Johnson, Hanen Alexander et al., Houston, TX, for St Luke's Episcopal Hospital, Branislav Radovancevic, Dr., O. Howard Frazier, MD, Surgical Associates of Texas, P.A., the University of Texas Houston Health Science Center, Baylor College of Medicine, Texas Heart Institute, Edward K. Massin, Dr., defendants.

## AMENDED MEMORANDUM OPINION AND ORDER

HOYT, District Judge.

### I. INTRODUCTION

Before the Court is the defendant's, St. Luke's Episcopal Hospital ("St.Luke's") motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted.[1] The plaintiff, Joyce Riley, relator for the United States, filed suit against the defendants in accordance with 31 U.S.C. § 3729, the False Claims Act ("FCA"), alleging fraud against the United States. After thorough review, the Court determines that it should GRANT the defendant's 12(b)(6) motion to dismiss.[2]

---

1. The defendants also moved the Court to dismiss pursuant to Rule 9(b)(2). The Court's dismissal pursuant to Rule 12(b)(6) renders this inquiry moot.

2. The Court dismisses this case in its entirety to include claims against each of the following defendants: (1) Dr. Branislav Radovancevic; (2) Dr. O. Howard Frazier; (3) Dr. Edward K. Massin; (4) Surgical Associates of Texas, P.A.; (5) Baylor College of Medicine; (6) The University of Texas Health Science Center; and (7) The Texas Heart Institute.

## II. FACTUAL BACKGROUND

The Court adopts the facts as they are recited in its Memorandum Opinion and Order dated December 21, 1997, and adds the following facts. The Court's prior ruling in this case, addressing relator's standing, was remanded by the Fifth Circuit for further consideration consistent with its ruling.[3] Subsequent to the Fifth Circuit's ruling, the defendants renewed their earlier, unaddressed, motions to dismiss. As directed by the Court of Appeals, the Court will now consider the parties motions without regard to the relator's standing. On December 19, 2001, the Court called the parties before it to clarify the professional status of Dr. Branislav Radovancevic ("Dr.Radovancevic"). It was determined that Dr. Radovancevic graduated from the University of Belgrade with a degree in Medicine in 1978, and that he is an Associate Professor of Medicine at the University of Texas Medical School in Houston. Dr. Radovancevic, however, is not licensed to practice medicine in Texas or any other state in the United States.

## III. CONTENTIONS OF THE PARTIES

### A. St. Luke's Argument

St. Luke's moves the Court to dismiss Riley's claims pursuant to Rule 12(b)(6). In support of its motion, St. Luke's argues that Riley has failed to state a claim for which relief may be granted because the FCA is not a regulatory scheme for statutory compliance. Rather, it is a cause of action designed to remedy intentional acts of fraud. St. Luke's points out that Medicare recognizes hospital billings based on a patient's Diagnosis–Related Group ("DRG") regardless of who actually provides treatment. Therefore, Dr. Radovancevic's participation in patient care, which becomes a part of billing, is immaterial.

Simply put, St. Luke's contends that claims were submitted only for services provided. Moreover, it argues, the government suffered no loss. And, when the Texas State Board of Medical Examiners investigated the circumstances giving rise to this suit it found "no violation of the Texas Medical Practice Act" by the defendants. *See* Texas State Board of Medical Examiner's letter dated May 12, 1997.

St. Luke's moves the Court to also dismiss Riley's charge of improper patient upgrades. The decision to upgrade a patient's status is a matter of professional judgment exercised by the treating physician. St. Luke's notes that "errors based on faulty calculations or flawed reasoning are not false under the FCA." *United States ex rel. Lamers v. City of Green Bay*, 168 F.3d 1013, 1018 (7th Cir.1999). And, that "expressions of opinion, scientific judgments, or statements as to conclusions about which reasonable minds may differ cannot be false." *United States ex rel. Roby v. Boeing Co.*, 100 F.Supp.2d 619, 625 (S.D.Ohio 2000) citing *Hagood v. Sonoma County Water Agency*, 81 F.3d 1465, 1477–78 (9th Cir.1996). As a result, St. Luke's argues that Riley's claim of improper patient upgrades should be dismissed as baseless.

Finally, St. Luke's moves the Court to dismiss Riley's FCA conspiracy claim. "The essence of a conspiracy under the [FCA] is an agreement between two or more persons to commit fraud." *United States ex rel. Atkinson v. Pennsylvania Shipbuilding Co.*, 2000 WL 1207162 (E.D.Pa.2000). St. Luke's argues that Riley has failed to allege any specific agreement of a conspiratorious nature, much less an agreement to defraud the government. Moreover, the mere fact that the defendants worked closely together for patients in the Hospital's transplant unit sim-

3. *Riley v. St. Luke's Episcopal Hospital,* 252 F.3d 749 (5th Cir.2001) (*en banc*).

ply cannot support a claim for conspiracy. In sum, St. Luke's argues that Riley's conspiracy claim is baseless and conclusory.

### B. Riley's Argument

Riley alleges three FCA causes of action: (1) false certification; (2) improper upgrades of patients; and (3) conspiracy to defraud the government. See 31 U.S.C. § 3729(a)(1–3). In straightforward fashion, Riley argues that it would be improper for this Court to dismiss the false certification claim because the Fifth Circuit has ruled that false certification gives rise to an FCA cause of action when the government conditions payment on certification. *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 902 (5th Cir.1997). Here, Riley argues that St. Luke's defrauded the government because when St. Luke's billed Medicare it impliedly certified that Dr. Radovancevic was a licensed physician when it knew that he was not.

Additionally, Riley argues that St. Luke's violated the FCA by allegedly upgrading transplant patients to a higher priority status on the donor list when their condition did not require such an upgrade. Riley argues that St. Luke's upgraded patients in order to receive additional monies from the government and to be known, generally, as the "hospital that will get you a transplant quicker." When hospitals falsely upgrade patients the government is forced to pay additional funds. Therefore, Riley argues that it would be improper for the Court to dismiss this claim. Finally, Riley argues that St. Luke's conspired to defraud the government when it allegedly instructed its nurses to sign Dr. O. Howard Frazier's ("Dr.Frazier") name instead of Dr. Radovancevic's on medical forms because it knew that Dr. Radovancevic was not licensed to practice medicine in Texas.

## IV. STANDARD OF REVIEW

### A. Rule 12(b)(6)

A motion to dismiss for failure to state a claim under Federal Rules of Civil Procedure 12(b)(6) "is viewed with disfavor and is rarely granted." *Lowrey v. Texas A & M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997); see also *Henrise v. Horvath*, 94 F.Supp.2d 768, 769 (N.D.Tex.2000). A district court cannot dismiss a complaint, or any part of it, for failure to state a claim upon which relief can be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); see also *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995); see also *Henrise*, 94 F.Supp.2d at 769.

In reviewing a Rule 12(b)(6) motion, the Court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996); see also *Henrise*, 94 F.Supp.2d at 769. In ruling on such a motion, the Court cannot look beyond the pleadings. *Baker*, 75 F.3d at 196. Further, the ultimate question is whether the complaint states a valid cause of action when it is viewed in the light most favorable to the plaintiff and with every doubt resolved in favor of the plaintiff. *Lowrey*, 117 F.3d at 247. Yet, a plaintiff must plead specific facts, not mere conclusory allegations, to avoid dismissal. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir.1992); see also *Henrise*, 94 F.Supp.2d at 769.

### B. False Claims Act ("FCA")

Claims for services rendered in violation of a statute are not necessarily false or fraudulent. *United States ex rel. Thompson*, 125 F.3d at 902. To ascertain whether FCA liability exists, the Court must determine: "(1) whether there was a

false statement or fraudulent course of conduct; (2) made or carried out with the requisite scienter; (3) that was material; and (4) that caused the government to pay out money or to forfeit monies due." *United States ex rel. Wilkins v. North Am. Constr. Corp.*, 101 F.Supp.2d 500, 514–15 (S.D.Tex.2000) (quoting *Harrison v. Westinghouse Savannah River. Co.*, 176 F.3d 776, 788 (4th Cir.1999)) (cited with approval in *United States ex rel. Russell v. Epic Healthcare Mgmt. Group*, 193 F.3d 304, 308 (5th Cir.1999)). Under the FCA, an individual "knowingly" submits a false claim if the person: (1) has actual knowledge of the information; (2) acts in deliberate ignorance of the information; or (3) acts in reckless disregard of the truth or falsity of the information. 31 U.S.C. § 3729(b)(1–3).

(i). *False Certification*

■ Where the government conditions payment of a claim upon certification, the FCA is implicated. *United States ex rel. Thompson*, 125 F.3d at 902–03. Certification may be express or implied. *Id.* Federal courts, however, are reluctant to endorse an implied certification theory. *See Luckey v. Baxter Healthcare Corp.*, 183 F.3d 730 (7th Cir.1999); (squarely rejecting implied certification for technical violations of a federal statute where defendant medical lab certified to general compliance with government regulations); *United States ex rel. Hopper v. Anton*, 91 F.3d 1261 (9th Cir.1996) (rejecting fraud where claim was based upon an implied theory of certification to compliance with voluminous government regulations); *United States ex rel. Mikes v. Straus*, 84 F.Supp.2d 427, 433–34 (S.D.N.Y.1999) (rejecting implied certification and holding that defendant physicians did not submit false or fraudulent claims for Medicare reimbursement where medical equipment failed to meet professionally recognized standards allegedly required by the government).

■ FCA liability is not to be imposed each time a document or request for payment is submitted to the federal government out of compliance, regardless of whether the submitting party is aware of non-compliance. *See e.g. United States ex rel. Joslin v. Community Home Health of Md., Inc.*, 984 F.Supp. 374, 384 (D.Md. 1997). To do so would vitiate the FCA's requirement that false claims, records, or statements be knowingly made. *See Luckey v. Baxter Healthcare Corp.*, 2 F.Supp.2d 1034, 1045 (N.D.Ill.1998), aff'd, 183 F.3d 730 (7th Cir.1999) (noting that the "FCA is not a vehicle for regulatory compliance" and for that reason, "finding of false implied certification under the Act for every request of payment accompanied by a failure to comply with all applicable regulations, without more, improperly broadens the intended reach of the FCA."); *see also United States ex rel. Swafford v. Borgess Medical Center*, 98 F.Supp.2d 822, 828 (W.D.Mich.2000) ("holding that mere violations of administrative regulations are not actionable under the FCA unless the violator knowingly lies to the government about them"). Accordingly, the FCA is not a remedy for mistakes or mere non-compliance, but rather a cause of action for intentional acts of fraud. *See United States of America ex rel. Durcholz v. FKW Inc.*, 189 F.3d 542 (7th Cir.1999) (neither innocent mistake nor negligent behavior is actionable under the FCA) *see also United States ex. rel. Lamers v. City of Green Bay*, 168 F.3d 1013, 1020 (7th Cir.1999) ("[t]he FCA is not an appropriate vehicle for policing technical compliance with administrative regulations").

(ii). *Treatment and Professional Judgment (Improper Upgrades)*

■■ Claims for treatment, not provided for under Medicare or medically unnec-

essary, are actionable under the FCA. 31 U.S.C. § 3729(a)(1–2); *see United States ex rel. Thompson,* 125 F.3d at 902–03. To recover, a plaintiff must demonstrate that the alleged claim or statement was actually false or fraudulent. Falsehood is an objective determination. *United States ex rel. Roby,* 100 F.Supp.2d at 625 citing *Hagood,* 81 F.3d at 1477–78. As a result, "expressions of opinion, scientific judgments, or statements as to conclusions about which reasonable minds may differ cannot be false." *Id.* Moreover, "errors based on faulty calculations or flawed reasoning are not false under the FCA." *United States ex rel. Lamers v. City of Green Bay,* 168 F.3d 1013, 1018 (7th Cir.1999).

(iii) *Conspiracy*

Conspiracy to defraud the government is also actionable under the FCA. 31 U.S.C. § 3729(a)(3). To state a claim under the FCA for conspiracy, a relator must show: (1) that the defendant conspired with one or more persons to get a false or fraudulent claim allowed or paid by United States, and (2) that one or more conspirators performed any act to get a false or fraudulent claim allowed or paid. *Atkinson,* 2000 WL 1207162 at *10. "Allegations that amount to nothing more than an agreement to act lawfully, cannot be actionable claims under the FCA for conspiracy." *Id.* at *11. If a conspiracy is shown, each coconspirator will be held liable for every action taken in furtherance of the conspiracy. *Id.*

## V. ANALYSIS

In this case, Riley's principal argument is that Dr. Radovancevic is not licensed to practice medicine in Texas and that Medicare pays for certain evaluations and procedures only when performed by a licensed physician. Therefore, any governmental monies paid to St. Luke's for Dr. Radovancevic's services are monies procured by fraud and in violation of the FCA.

However, claims for services rendered in violation of a statute are not necessarily false or fraudulent. *United States ex rel. Thompson,* 125 F.3d at 902. After all, a true FCA violation requires a showing that the claim was knowingly false. Thus, when certification of compliance with guidelines is a prerequisite to obtaining a government benefit, FCA liability attaches. *Id.* Of course, the FCA's requirements of materiality and knowing falsehood are foremost considerations. Thus, certification of general compliance, where hundreds if not thousands of regulations must be satisfied, are given less materiality weight under a fraud review, than a more particularized specific certification. Put differently, mistakes and misunderstandings are not fraud. Indeed, the FCA is not a regulatory vehicle, and it's scope should not be broadened to include every instance where a claimant fails to comply with all applicable regulations. *Luckey v. Baxter Healthcare Corp.,* 2 F.Supp.2d 1034, 1045 (N.D.Ill.1998) aff'd, 183 F.3d 730 (7th Cir.1999).

The evidence shows that Medicare claims were submitted for medical evaluations and procedures admittedly performed by a foreign licensed doctor, serving on the University of Texas Medical School faculty, while acting under the supervision of a Texas licensed physician. However, Riley does not claim that St. Luke's billed Medicare for unprovided services, but rather argues that Dr. Radovancevic's status, as an unlicensed foreign doctor, makes any and all claims submitted to Medicare, in which he participated, false or fraudulent. Dr. Radovancevic's supervising physician, Dr. Frazier, was responsible for Dr. Radovancevic and signed off for his work. The Court holds that Riley's argument is fundamentally flawed. The record shows that the Texas State Board of Medical Examiners investigated Dr. Frazier and the circumstances surrounding the

Frazier/Radovancevic relationship and found no violation of the Texas Medical Practice Act. *See* Texas State Board of Medical Examiner's letter dated May 12, 1997.

Also, the FCA is designed to address fraudulent acts, where an individual or entity intentionally takes advantage of the government by soliciting funds not properly due. Riley does not claim that St. Luke's solicited funds not properly due. Moreover, no evidence has been presented on that account. Nor are there allegations of over billing, in the true sense of the term. What the record does reflect is that under the Medicare billing scheme, payments are made to a hospital based on a patient's DRG, regardless of who actually provides treatment. And, because St. Luke's is paid a fixed amount for inpatient services based on the DRG assigned, none of the alleged procedures by Dr. Radovancevic could have altered the amount of money paid to the Hospital for the particular patient's care. Thus, Dr. Radovancevic's participation is immaterial.

However, even if St. Luke's failed to document Dr. Radovancevic's status, no loss to the government is revealed because all funds paid were for services provided. There is no evidence suggesting that St. Luke's crafted some elaborate scheme to defraud the government. Quite the opposite. The evidence shows that St. Luke's provided medical care to patients who desperately needed care. Additionally, the certification required on Form HCFA–1500 does not reveal fraud. The certification is sufficiently broad that it covers any and all divergence from Medicare guidelines.[4] The Court holds that the fraud allegations fail as unsupported by the evidence.

Finally, Riley alleges that St. Luke's engaged in conspiratorious conduct under the FCA. To succeed on this claim, Riley must show that the defendants conspired with each other to defraud the government and that one or more of the coconspirators performed an act in furtherance of the conspiracy. Riley's conspiracy theory can be reduced to the following: (1) St. Luke's instructed its nurses to follow Dr. Radovancevic's orders, but sign his supervising physician's, Dr. Frazier, name on all medical orders; (2) St. Luke's nurses followed said instructions; and therefore (3) an agreement to defraud the government has been established. This argument also fails. Primarily, this argument fails because the premise underlying Riley's argument fails. This argument presupposes that the certifications sent to Medicare were fraudulent and that, because Dr. Radovancevic is not licensed in Texas, fraud is presumed. The Court has addressed these arguments already and found them lacking. The Court is also of the opinion that when an employer engages in an otherwise legal activity, the fact that they cooperate in accomplishing their activities does not constitute conspiratorious conduct. There is no credible evidence that a conspiratorial agreement to defraud the government existed.

## VI. CONCLUSION

The Court is of the opinion and it holds that the defendant's motion to dismiss should be and is GRANTED.

It is so ORDERED.

---

4. St. Luke's certified the following: Notice: Anyone who misrepresents or falsifies essential information to receive payment from Federal funds requested by this form may upon conviction be subject to fine and imprisonment under applicable Federal laws. Form HCFA 1500.