United States Court of Appeals
Fifth Circuit

**F I L E D**

**January 9, 2004**

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

02-20825

UNITED STATES OF AMERICA, EX REL, JOYCE RILEY,

Plaintiff-Appellant,

VERSUS

ST. LUKE'S EPISCOPAL HOSPITAL, ET AL

Defendants,

ST. LUKE'S EPISCOPAL HOSPITAL; BRANISLAV RADOVANCEVIC, DR.;
O. HOWARD FRAZIER, M.D.; SURGICAL ASSOCIATES OF TEXAS, P A;
BAYLOR COLLEGE OF MEDICINE; TEXAS HEART INSTITUTE;
EDWARD K. MASSIN, DR.

Defendants-Appellees.

Appeal from the United States District Court
For the Southern District of Texas

Before DAVIS, SMITH, and DUHÉ, Circuit Judges.

DUHÉ, Circuit Judge:

Plaintiff Joyce Riley, a former nurse at St. Luke's Episcopal Hospital, sued Defendants under the *qui tam* provisions of the False Claims Act ("FCA"), 31 U.S.C. §§ 3729 & 3730(b). The district court dismissed the complaint under Rule 12(b)(6) for failure to state a claim. We hold that dismissal was inappropriate at this stage of the litigation and accordingly reverse and remand for

further proceedings.

## I. BACKGROUND

Riley alleges that Defendants filed false claims with Medicare and the Civil Health and Medical Program of the Uniformed Services (CHAMPUS) for services that were either medically unnecessary or rendered by an unlicensed physician. Defendants Surgical Associates of Texas, St. Luke's Episcopal Hospital, and Drs. Edward Massin and O. Howard Frazier allegedly sought Medicare or CHAMPUS reimbursement for false claims. Defendant Baylor College of Medicine allegedly trained or employed residents, students, and fellows who worked at St. Luke's and who aided the filing of false claims. Defendants Dr. Branislav Radovancevic and his employer, the Texas Heart Institute (THI), allegedly aided the filing of false claims. THI is an organization of doctors at St. Luke's who specialize in treating heart conditions and performing heart transplants. Dr. Radovancevic earned a medical degree in Belgrade, and has not passed the medical licensing exam in Texas.[1]

Riley asserts essentially that Radovancevic, despite being unlicensed, performed physician services for patients whose bills were submitted to and paid by Medicare or CHAMPUS. Her complaint also asserts that, in apparent pursuit of prestige by being

_____

[1] References to Defendants are as follows: collectively, "Defendants"; Surgical Associates of Texas and Drs. Frazier and Massin, "Physician Defendants"; St. Luke's, THI and its employee Branislav Radovancevic, "Hospital Defendants"; and Baylor, "Baylor."

industry leaders in terms of number of heart transplants performed, Defendants performed unnecessary heart transplants paid for by Medicare or CHAMPUS. The complaint also charges a civil conspiracy to file false claims.

The district court dismissed Riley's claims against all Defendants. United States ex rel. Riley v St. Luke's Episcopal Hosp., 200 F. Supp. 2d 673 (S.D. Tex. Apr. 3, 2002), amended 2002 WL 32116882 (S.D. Tex. June 27, 2002). The district court wrote that the FCA is not a vehicle for regulatory compliance, and that materiality and a knowing falsehood are required to implicate the FCA. Id. 200 F.Supp. 2d at 679. The court held that Medicare payments are made according to the patient's Diagnosis-Related Group, regardless of who provides treatment; therefore, Dr. Radovancevic's participation was immaterial to billing and could not provide the basis for an FCA claim. Id. at 680. On the question of medical necessity, the court dismissed the claims as challenging scientific judgment about which reasonable minds may differ, holding that such an opinion cannot be "false" for purposes of the FCA. Id. at 679. Finding no illegal activity, the court found no conspiratorial conduct. Id. at 680.

## II. DISCUSSION

### A. Appellate Jurisdiction

The Hospital Defendants contend that we lack jurisdiction because Riley's notice of appeal was untimely. When the United

States is not a party in an FCA suit, Rule 4(a)(1) allows sixty days from the entry of the judgment appealed to file a notice of appeal. United States ex rel. Russell v. EPIC Healthcare Mngt. Group, 193 F.3d 304, 308 (5th Cir. 1999).

Riley noticed her appeal July 16, 2002. The district court entered a "Final Judgment" on April 1, 2002, providing that "plaintiff shall take nothing" and referencing reasons given in a memorandum opinion which granted only St. Luke's motion to dismiss. An "Amended Final Judgment" entered April 3 provided that "*defendants* will take nothing" and referenced reasons in an "amended" memorandum opinion dismissing in favor of all Defendants. On April 5 the district court vacated the April 3 defendants-take-nothing judgment and reinstated the April 1 plaintiff-take-nothing judgment.

Plaintiff and Defendants both filed post-judgment motions. After rulings, the district court issued the following "Amended Final Judgment," entered June 26:

> Pursuant to the Amended Memorandum Opinion and Order dated April 2, 2002, as modified by this Court's order of June 25, 2002 [entered June 27], Plaintiff will take nothing by this suit. This Court's Judgments [entered April 1 and April 3] are hereby vacated.
> This is a Final Judgment.

The Hospital Defendants characterize the foregoing judgment as a mere clerical correction that followed their post-judgment Motion for Correction of Minor Mistakes. Thus they argue this judgment would not interrupt or restart the time for appealing the real

4

underlying judgment, the one entered April 1, from which Plaintiff's appeal is untimely. They argue that Plaintiff's post-judgment motion was also ineffective to extend the appellate deadline because it addressed a judgment that was vacated.

We disagree. Federal Rule of Appellate Procedure 4(a)(4) specifies several post-judgment motions which must be disposed of before a notice of appeal can be effective. One is a timely filed motion to alter or amend the judgment under Rule 59. Plaintiff moved to alter or amend judgment on April 5, which was timely and thus effected a tolling of the time for appeal under Rule 4(a)(4)(A). Plaintiff's post-judgment motion was timely because it was "filed no later than 10 days after the judgment [was] entered." Fed. R. Civ. P. 59(b).[2]

Nor was Plaintiff's post-judgment motion moot because of the vacatur of the April 3 judgment. Because her motion (except one part addressing the defendants-take-nothing error in the April 3 judgment) addressed the merits underlying the judgment as reflected in the memorandum opinions, it was not mooted by the district court's vacatur of the April 3 judgment, which corrected only the clerical error.

Since Plaintiff's motion to alter or amend judgment was timely, the time for filing an appeal ran from the entry of the

---

[2] As the Advisory Committee's noted about Rule 59(b), "The phrase 'no later than' is used — rather than 'within' — to include post-judgment motions that sometimes are filed before actual entry of the judgment by the clerk."

order denying her motion or granting or denying any of the other motions listed in Rule 4(a)(4). Fed. R. App. P. 4(a)(4)(A). Thus by any count,[3] her notice of appeal was timely and sufficient to confer appellate jurisdiction.

**B. Legal Standards for Motion to Dismiss**

A district court should dismiss for failure to state a claim only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). We review such ruling de novo. United States ex rel. Thompson v. Columbia/HCA Healthcare Corp., 125 F.3d 899, 901 (5th Cir. 1997). The complaint must be liberally construed in favor of the plaintiff, and all well-pleaded facts accepted as true. Kaiser Aluminum & Chem. Sales v. Avondale Shipyards, Inc., 677 F.2d 1045, 1050 (5th Cir. 1982), cert. denied, 459 U.S. 1105, 103 S.Ct. 729, 74 L.Ed.2d 853 (1983).

Riley urges us to reverse the district court, because it made assumptions about "evidence" rather than accepting the well-pled allegations as true. Indeed the district court's opinion made several references to the evidence and few, if any, to the pleadings. The exhibits attached to the complaint, however, are part of the complaint "for all purposes." Fed. R. Civ. P. 10(c).

---

[3] Plaintiff's July 16 notice of appeal was filed within the designated time after entry of the final judgment (June 26) and within the designated time after entry of both the orders disposing of post-judgment motions (June 17 and June 27).

Thus it is not error to consider the exhibits to be part of the complaint for purposes of a Rule 12(b)(6) motion.[4]

To the extent that the district court held that the fraud claims failed "as unsupported by the evidence," and noted that there was "no evidence" or "no credible evidence" on certain issues, however, the court was not applying the correct standard for a Rule 12(b)(6) motion. See Rubinstein v. Collins, 20 F.3d 160, 166 (5th Cir. 1994); Thompson, 125 F.3d at 901.

A Rule 12(b)(6) dismissal is not warranted just because the district court "believes the plaintiff is unlikely to prevail on the merits." Clark v. Amoco Prod. Co., 794 F.2d 967, 970 (5th Cir. 1986). "Even if it seems 'almost a certainty to the court that the facts alleged cannot be proved to support the legal claim,' the claim may not be dismissed so long as the complaint states a claim." Id. (quoting Boudeloche v. Grow Chem. Coatings Corp., 728 F.2d 759, 762 (5th Cir. 1984)).

**C. Stating a Claim under the FCA**

---

[4] Although the district court's memorandum opinion initially seemed to address only St. Luke's Rule 12(b)(6) motion to dismiss, upon reconsideration the district court amended its memorandum opinion to clarify that each of the defendants was dismissed, under each of their motions — including Baylor's "motion to dismiss *or for summary judgment*" — for the reasons stated in its memorandum opinion of April 2. The fact that Baylor attached evidence to its motion for summary judgment does not change our opinion. In the context of the memorandum opinion of April 2, it is apparent that the court granted relief to Baylor based on its motion to dismiss and not based on its summary judgment evidence. See infra subpart D.

To state a claim under the FCA, subsection (a)(1), a relator must allege that the defendant "knowingly" made "a false or fraudulent claim" to the United States Government. 31 U.S.C. § 3729(a)(1) (West 1999). Similarly, to state a claim under subsection (a)(2), the relator must allege that the defendant "knowingly" made or used "a false record or statement to get a false or fraudulent claim" paid by the Government. Id. § 3729(a)(2). Generally Riley alleges that Defendants violated those two subsections of the FCA by admitting and upgrading patients unnecessarily and covering up for medical bills submitted for services of an unlicensed doctor.[5] She also alleges that Defendants conspired to defraud the Government into paying false or fraudulent claims (FCA subsection (a)(3)). ¶¶ 217-19.

1. Medically Unnecessary Services.

As the district court recognized, claims for medically unnecessary treatment are actionable under the FCA.[6] The district

___

[5] Second Am. Complaint filed March 17, 1997, ¶¶ 211-13. Further citations to the second amended complaint are by paragraph number only.

[6] Physician claim Form HCFA-1500 carries an express certification "that the services shown on this form were medically indicated and necessary for the health of the patient." Similarly if a hospital seeks CHAMPUS reimbursement, the same certification is present (Form HCFA-1450). Peterson v. Weinberger, 508 F.2d 45, 52 (5th Cir.), cert. denied, 423 U.S. 830, 96 S.Ct. 50, 46 L.Ed.2d 47 (1975), recognized that an express false certification on a claim form submitted to the Government for payment is actionable under the FCA. That the services be medically necessary is a condition for payment under the regulations. See 42 U.S.C. § 1395y(a)(1)(A) (proscribing payment under Medicare Part A or Part B unless items or services are "reasonable and necessary"); see

8

court concluded, however, that expressions of opinion or scientific judgments about which reasonable minds may differ cannot be "false." St. Luke's, 200 F.Supp. 2d at 679. We agree in principle with the district court and accept that the FCA requires a statement known to be false, which means a lie is actionable but not an error. We disagree, however, with the court's assessment of the sufficiency of the allegations.

Riley's complaint does sufficiently allege that statements were known to be false, rather than just erroneous, because she asserts that Defendants ordered the services knowing they were unnecessary. The complaint states generally that "patients were unnecessarily admitted to St. Luke's . . . and/or their organ transplant status artificially upgraded," ¶ 7, and that Defendants "knew of, directed, and personally participated in the fraudulent conduct and false claims described [in the complaint]." ¶¶ 42-49. More particularly, Riley alleges a "scheme" connoting knowing misconduct: the Physician Defendants and Hospital Defendants "participated in a scheme that allowed for the unnecessary admission and artificial upgrade of the status of some heart transplant patients." ¶ 32.

The "knowing" aspect is reiterated throughout the complaint:

[Defendants] were aware of the impropriety of their actions.
. . .

_____

also 42 C.F.R. § 424.32(b) (requiring the use of these forms for claims).

9

Also, because . . . Defendants wrongly admitted and upgraded patients, bills submitted to the federal government were rendered false and unpayable. . . . Defendants falsely upgraded patients and issued bills for inappropriate care. . . . Defendants . . . violated the FCA in rendering inordinate care in unnecessary instances . . . .

. . .

A known and intended result of Defendants' conspiracy was to induce the Government to pay . . . for fraudulent hospital services and medical care as described above.

¶¶ 33, 120, 218. These allegations satisfy the FCA's requirement that Defendants "know" that the record, statement, or claim is false.

Dismissing the allegations of claims for medically unnecessary services, the district court stated, "The evidence shows that St. Luke's provided medical care to patients who desperately needed care." This controversial finding or conclusion raises the question of the role of the exhibits attached to the complaint. Some of Riley's allegations are qualified by the contents of attached documents. For example, "The medical records of two example patients show that admission to the hospital and/or admission to the intensive care unit was not medically justified." ¶ 32. If such an allegation is contradicted by the contents of an exhibit attached to the pleading, then indeed the exhibit and not the allegation controls. Simmons v. Peavy-Welsh Lumber Co., 113 F.2d 812, 813 (5th Cir.), cert. denied, 311 U.S. 685, 61 S. Ct. 63, 85 L. Ed. 442 (1940).

Some of Riley's allegations, however, are not dependent on the documents incorporated into her complaint. For example, Riley

10

claims, "The Defendants participated in a scheme that brought heart transplant patients to the hospital and/or to ICU who were not, at that time, truly needing hospital care." ¶ 120. Additionally, Riley expressly alleges that she "does not have detailed information on all Medicare and CHAMPUS patients treated by the Defendants." ¶ 121. The complaint thus conveys that her referenced exhibits are meant to provide examples only and are not intended to signify exclusive incidents. See also ¶ 208 ("These are only examples from five patient records . . . .").

At this preliminary stage, the district court should dismiss only if it appears beyond doubt that Plaintiff can prove "no set of facts" in support of her claim. Conley v. Gibson, 355 U.S. at 45. Even if Riley's exhibits called into question one or more of the examples she alleged, they did not call into question all her allegations of false claims. The district court therefore acted prematurely in dismissing the complaint because it precluded the opportunity for Plaintiff by subsequent proof to establish a claim supporting the allegations not refuted by exhibits. Compare Clark, 794 F.2d at 970 (holding dismissal under Rule 12(b)(6) improper unless the complaint "on its face show[s] a bar to relief"), with Simmons, 113 F.2d at 813 (holding exhibits defeat claim on contract where letter attached shows clearly the absence of any contract, express or implied).

Defendants next argue that not all Defendants are implicated by the allegations regarding ICU upgrades and hospital admissions.

11

The Physician Defendants argue that they could not have filed claims for hospitalization or ICU upgrades because such costs are billed by the hospital, not the physicians. Hospital Defendants contend that they do not bill for physician services and had no part in the admission or upgrade of patients to ICU — matters accomplished only by doctor's orders.

The FCA applies to anyone who "'knowingly assist[s] in causing'" the government to pay claims grounded in fraud, "'without regard to whether that person ha[s] direct contractual relations with the government.'" Peterson v. Weinberger, 508 F.2d 45, 52-53 (5th Cir.) (quoting United States ex rel. Marcus v. Hess, 317 U.S. 537, 544-45, 63 S.Ct. 379, 87 L.Ed. 443 (1943)), cert. denied, 423 U.S. 830, 96 S.Ct. 50, 46 L.Ed.2d 47 (1975). "Thus, a person need not be the one who actually submitted the claim forms in order to be liable." United States v. Mackby, 261 F.3d 821, 827 (9th Cir. 2001). Riley does allege that the defendants assisted one another and cooperated in a scheme or pattern of billing for and covering up these allegedly false-claim items. See ¶¶ 27, 30, 32, 42-49, 120, 213, 217. Under the "knowing assistance" standard of Hess and Peterson, these allegations suffice to implicate all Defendants.

2. Services by an Unlicensed Physician.

Riley alleges that Defendants cooperated in billing for services rendered by an unlicensed physician, Branislav Radovancevic, who could not lawfully bill Medicare or CHAMPUS himself.

12

The Physician Defendants argue that while Riley might have alleged unauthorized practice of medicine, she did not allege a false or fraudulent claim from Dr. Radovancevic's alleged unauthorized practice. We disagree. The complaint alleges that when the Hospital Defendants or Physician Defendants submitted their claims, "they warranted and represented that the services in such statements were rendered by duly licensed physicians or persons who are otherwise qualified under the various regulations, codes, and standards. Many of the professional services rendered, in part or in whole to those patients, were nevertheless those of Dr. Radovancevic," ¶ 28, whom she alleges was neither authorized nor supervised. ¶ 30.

The Physician Defendants point out that their claim forms are expressly designed to include services furnished "by my employee under my immediate personal supervision." The allegations of the complaint, however, are that Dr. Radovancevic provided the services "without authority or supervision." ¶ 30. We accept these allegations as true at this stage of the proceedings. A certifying doctor who is not the doctor who rendered or personally supervised the services is subject to liability for a false claim. See Peterson, 508 F.2d at 52.

The Hospital Defendants argue that Riley never alleged that they submitted false claims for Dr. Radovancevic's services. Because there is no false-claims liability for an inadvertent error, they argue that they should not be liable either for a

13

regulatory misstep or for services that were immaterial to the hospital billings. Arguing against implied-certification liability, St. Luke's maintains that it cannot be deemed to have "knowingly" submitted a false claim based on a regulatory misstep, where it has actually rendered the services billed. THI and Dr. Radovancevic contend that, because they did not submit claims at all, they are not implicated by the allegations.

St. Luke's arguments fail, because Riley has not alleged simple inadvertence. Taking Riley's allegations as true, St. Luke's knew full well that Dr. Radovancevic could not practice medicine, yet provided him the means to do so regardless,[7] instructed nurses to conceal the impropriety,[8] and hid his services in false billings to Medicare and CHAMPUS, trying to keep Dr. Radovancevic's name out of their records.[9]

---

[7] She alleges that the Physicians Defendants and St. Luke's were aware of the impropriety of their actions and willingly gave Dr. Radovancevic a place and method to practice "rather than showing [him] the door." ¶¶ 33, 110.

[8] The complaint asserts that "the nursing staff at St. Luke's [] were told to follow the orders of Branislav Radovancevic, but directed not to sign his name on any written documentation, such as physician orders. Instead nurses were instructed in some instances to sign Dr. Frazier's name . . . [or someone else's name]." ¶ 33; see also ¶ 34 (alleging Defendants' "concerted effort" to keep Radovancevic's name from written records).

[9] Riley alleges that false and unpayable hospital bills were submitted for Dr. Radovancevic's care specifically for Patient No. 1108146 and an order for drugs. More generally the complaint states that Dr. Radovancevic did not himself bill for any services but that his services nevertheless manifested themselves in false or fraudulent billings by the Physician Defendants as well as St. Luke's. ¶¶ 25, 29, 117, 118, 119, 169, 207.

14

Allegations suffice under the FCA if they state that defendant made a record or statement known to be false or fraudulent in order to get a false claim paid. 31 U.S.C. § 3729(a)(2). "False" can mean "deceitful," or "tending to mislead,"[10] and a "false claim" is one "grounded in fraud which might result in financial loss to the Government." Peterson, 508 F.2d at 52. The FCA "reaches beyond 'claims' which might be legally enforced, to all fraudulent attempts to cause the Government to pay out sums of money." Id.

This complaint is not like the one this Court discussed in Willard,[11] wherein all the claims were indisputably valid. Here, the allegations noted describe false records and false claims. The scienter element is satisfied without resorting to an implied certification theory of liability. Cf. Willard, 336 F.3d at 381 ("Because Willard does not allege that any of the claims were false in the sense that they contained false statements or were for services not performed or the like, Willard must resort to either

---

Riley alleges that a patient would receive "care, treatment, and professional service which justified the hospital billing to the government. Many of these services . . . could be carried out only on the order of a license physician. Some . . . charges . . . were directly or in part based on hospital services ordered by Branislav Radovancevic, an unlicensed physician." ¶ 31. She also alleges that "false claims were submitted, and the Government defrauded by virtue of the facts that [Defendants] . . . participated in a scheme that allowed Radovancevic, without authority or supervision, to care for Medicare and CHAMPUS heart transplant patients in direct violation of federal and state law." ¶ 30.

[10] Webster's Third New International Dictionary 819 (1981).

[11] United States ex rel. Willard v. Humana Health Plan, 336 F.3d 375, 380-81 (5th Cir. 2003).

15

the 'implied certification' or 'fraud in the inducement' theories of liability through which it may be possible to demonstrate that otherwise valid claims are actionable under the FCA.").

As for THI, Dr. Radovancevic, and Baylor, any stipulation that they did not file claims does not exonerate them. As discussed above, anyone who "knowingly assist[s] in causing" the government to pay claims grounded in fraud can be liable under the FCA. Peterson, 508 F.2d at 52.

We find Defendants' assertion that financial injury to the Government was not sufficiently alleged to be without merit.[12] The Hospital Defendants' argument that the FCA is inequitable in the healthcare industry is one more properly addressed to Congress than a court.

4. Conspiracy.

Defendants argue that Riley's conspiracy allegations are conclusory and that she fails to allege an identifiable act in furtherance of the conspiracy. Riley alleged that the acts

---

[12] The complaint sufficiently alleges financial injury to the Government. ¶ 32 ("[Defendants] participated in a scheme that allowed for the unnecessary admission and artificial upgrade of the status of some heart transplant patients. . . . This medical care and treatment falsely and fraudulently manifested itself into bills submitted to the federal government that were paid."); ¶ 180 ("The bills establish Defendant Radovancevic is making decisions that affect the amount the U.S. Government [sic], rendering the above bills false and unpayable."); ¶ 208 ("Because Defendants falsely admitted and upgraded patients . . . the bills submitted to the federal government were false and unpayable."); ¶ 219 ("The United States Government, unaware of the falsity . . . paid the full amount . . . .").

16

described in the complaint constituted one or more conspiracies "to defraud the United States Government by getting false, fraudulent claims approved or paid," and that Defendants "took substantial steps in furtherance of those conspiracies, *inter alia*, by preparing false records and claims and submitting such documents to the Government via the Medicare and/or CHAMPUS system for payment and approval." ¶ 217. Whether this general allegation of conspiracy survives will depend largely on whether the underlying allegations of false statements and false claims survive the specificity challenge under Rule 9(b), a matter we leave to the district court in the first instance, as discussed next.

**D. Matters Not Decided by the District Court**

Defendants ask that we affirm dismissal because the complaint did not meet the specificity requirement of Fed. R. Civ. P. 9(b). The district court did not address whether Riley's complaint complied with Rule 9(b) because it held that the dismissal for failure to state a claim rendered the inquiry moot.[13] Riley and Baylor also ask us to determine whether Baylor is entitled to relief on its motion for summary judgment — another matter not decided by the district court.[14]

---

[13] 200 F. Supp. 2d 673, 675 n. 1.

[14] While the district court declared that it was granting Baylor's "motion to dismiss or for summary judgment," we readily see from the court's reasons for ruling that the court granted only the motion to dismiss and did not act upon the alternative motion for summary judgment. <u>See</u>, <u>e.g.</u>, 200 F. Supp. 2d 673, 675

17

Although we may consider alternative grounds for upholding the district court's decision, <u>Flournoy v. Century Fin. Co., Inc. (In re Henderson)</u>, 577 F.2d 997, 1002 n. 5 (5th Cir. 1978), we decline to do so in this case. Thus the particularity requirements of Rule 9(b) and the merits of Baylor's motion for summary judgment can be addressed as necessary in the first instance by the district court upon remand. <u>See</u> <u>Youmans v. Simon</u>, 791 F.2d 341, 348 (5th Cir. 1986) (declining to consider Rule 9(b) challenges not been passed upon by the district court).

We remind the district court, however, of the central importance of rule 9(b) in regard to allegations of fraud:

> [T]he reference [in rule 9(b)] to "circumstances constituting fraud" usually requires the claimant to allege at a minimum the identity of the person who made the fraudulent statement, the time, place, and content of the misrepresentation, the resulting injury; and the method by which the misrepresentation was communicated . . . .
>
> In cases concerning fraudulent misrepresentation and omission of facts, Rule 9(b) typically requires the claimant to plead the type of facts omitted, the place in which the omissions should have appeared, and the way in which the omitted facts made the representations misleading.

2 James W. Moore et al., Moore's Federal Practice § 9.03[1][b], at 9-

---

(determination that Court "should GRANT the defendant's 12(b)(6) motion to dismiss"); <u>id.</u> n. 2 (amendment to original memorandum opinion, adding that dismissal is against all defendants – not just St. Luke's, whose motion to dismiss is the subject of the memorandum opinion); <u>id.</u> at 677-79 (discussing Rule 12(b)(6)); <u>id.</u> at 680 (concluding that motion to dismiss should be granted).

18 through 9-19 (3d ed. 2003) (footnotes omitted); <u>accord</u> <u>Tuchman v. DSC Communications Corp.</u>, 14 F.3d 1061, 1068 (5th Cir. 1994).

### III. CONCLUSION

After de novo review of the motions and second amended complaint, we hold that the district court misapplied the Rule 12(b)(6) standards in dismissing this matter. As the district court has not assessed the sufficiency of the complaint under Rule 9(b) or the merits of Baylor's motion for summary judgment, we remand to the district court for consideration of those matters in due course and for further proceedings consistent herewith. "Nothing in this opinion is to be construed as indicating the view of this court regarding the ultimate merits of any of the allegations."

REVERSED AND REMANDED.