# United States Court of Appeals for the Fifth Circuit

———————————

No. 25-50284
Summary Calendar

———————————

United States Court of Appeals
Fifth Circuit

**FILED**

October 23, 2025

Lyle W. Cayce
Clerk

STRATEGY AND EXECUTION, INCORPORATED,

*Plaintiff—Appellant*,

*versus*

BLACK RIFLE COFFEE COMPANY, L.L.C.,

*Defendant—Appellee*.

———————————————————————

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:23-CV-135

———————————————————————

Before DAVIS, WILSON, and DOUGLAS, *Circuit Judges*.

PER CURIAM:*

Plaintiff-Appellant Strategy and Execution, Inc. (SEI) sued Defendant-Appellee Black Rifle Coffee Company, L.L.C. (Black Rifle) for breach of a Consulting Agreement, claiming it is owed royalties for products manufactured after the Agreement's termination. The district court granted Black Rifle's motion to dismiss. We AFFIRM.

———————————————

* This opinion is not designated for publication. *See* 5TH CIR. R. 47.5.

No. 25-50284

SEI "is a consumer product goods consultant." Black Rifle "is a roaster/manufacturer of various premium coffee blends." On January 1, 2020, the two entered a Consulting Agreement with a four-year term—called the "initial term" or "initial period"—during which the parties could terminate only for cause. Once that initial term ended on January 1, 2024, the parties could continue their relationship and terminate the Agreement upon 90 days' notice.

In the initial term, SEI was to handle broad aspects of Black Rifle's business. In exchange, Black Rifle agreed to pay SEI $30,000/month, as well as royalties on certain products. The royalty provision reads:

> In addition to the monthly consulting fee, and specific to any RTD [Ready to Drink] beverages, energy drinks, or energy supplements **developed and manufactured during the initial term of this Agreement**, [Black Rifle] shall pay [SEI] a royalty of $.02 for each unit of product manufactured by any manufacturing facility introduced to [Black Rifle] during the initial term of this Agreement, or through [SEI's] direct efforts thereafter. The royalty shall be paid to [SEI] within thirty (30) days of receipt of the manufacturer's invoice by [Black Rifle].[1]

The Agreement's termination clause states termination "shall be without prejudice to any right which shall have accrued to either Party hereunder prior to such termination, including the right for [SEI] to receive post-termination compensation, commissions or royalties where applicable." Its integration clause says the "Agreement constitutes the entire understanding between the Parties . . . and supercedes [sic] all prior discussions, negotiations, agreements and understandings."

---

[1] Emphasis added.

No. 25-50284

SEI sued Black Rifle in February 2023 during the Agreement's initial term. The complaint alleges past and anticipatory breach of contract and seeks, among other things, a declaration of SEI's entitlement to royalties on products manufactured after the Agreement's termination on January 1, 2024.[2] Black Rifle moved to dismiss this latter claim for "perpetual" royalties. SEI opposed the motion and sought leave to amend if the district court found either the complaint's allegations insufficient or the Agreement ambiguous.

The district court, however, found the Agreement was not ambiguous and that SEI was not entitled to royalties on products manufactured after the Agreement's termination. The court also denied SEI leave to amend due to futility. SEI sought reconsideration and proffered an amended complaint containing allegations about the parties' pre-Agreement negotiations and understandings. The district court denied the motion and entered judgment for Black Rifle after the parties settled the remainder of SEI's claims. SEI timely appealed, and lists three questions for review—(1) whether the Agreement entitles it to post-termination royalties, (2) if so, what post-termination royalties are owed, and (3) whether the district court should have granted SEI leave to amend. Our review is de novo.[3] We apply Texas law, as the Agreement requires.

But first, we address two preliminary matters. SEI argues the district court erred by deciding the merits at the motion-to-dismiss stage instead of

---

[2] The complaint also asserts a claim based on promissory estoppel, which was dismissed and is not the subject of this appeal.

[3] *See Williams v. Integon Nat'l Ins. Co.*, 132 F.4th 801, 805 (5th Cir. 2025) (stating standard of review for grant of motion to dismiss); *Terry Black's Barbecue v. State Auto. Mut. Ins. Co.*, 22 F.4th 450, 459 (5th Cir. 2022) ("[W]hen the denial of leave to amend is based on futility, as is the case here, our review is de novo.").

No. 25-50284

crediting SEI's allegation that Black Rifle had breached (or was about to breach) the Agreement. The Agreement was attached to the complaint, though, and thus became part of the pleadings. As a result, the district court was not bound to accept SEI's allegations to the extent they contradicted the Agreement's plain terms.[4] Next, Black Rifle argues that SEI inadequately briefed, and therefore forfeited, the first question presented—whether the Agreement grants SEI a right to post-termination royalties.[5] We agree that SEI dedicated most of its principal brief to its second question and the corresponding meaning of the phrase, "$.02 for each unit of product manufactured by any manufacturing facility **introduced to** [Black Rifle] during the initial term of this Agreement."[6] In reply, however, SEI identifies seven sentences from its principal brief addressing the first question. With that, we've carefully considered the merits of each question that SEI presented for review.

Turning to the substance, Black Rifle references the first part of the royalty provision, which identifies the products on which a royalty is earned, and argues its plain language does not provide for royalties on products manufactured after the Agreement's initial term. In Black Rifle's view, a "product must actually roll off the manufacturing line before January 1, 2024" to be subject to a royalty. We agree. Indeed, we see no other way to read the royalty clause, which grants SEI a royalty on certain products "developed **and manufactured during the initial term of**"[7] the Agreement,

---

[4] *See United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 377 (5th Cir. 2004).

[5] *See Rollins v. Home Depot USA*, 8 F.4th 393, 397, 397 n.1 (5th Cir. 2021) (describing ways "a party can fail to adequately brief an argument").

[6] Emphasis added.

[7] Emphasis added.

and SEI offers no alternative.[8] If the parties had intended for royalties to be paid on products manufactured after January 1, 2024, the royalty provision would have said so.[9]

SEI, however, argues the termination provision's reference to "post-termination" royalties grants it a right to royalties on products manufactured after the Agreement's expiration. But that provision does not create an independent entitlement to royalties; rather, the phrase "post-termination compensation, commissions or royalties where applicable" serves as an example of the various rights that could accrue to either party during the Agreement's initial term. Read correctly, the language about "post-termination . . . royalties where applicable" contemplates a scenario where a product might be "developed and manufactured" before January 1, 2024, but the manufacturer's invoicing—which triggers Black Rifle's obligation to pay royalties—does not reach Black Rifle until after January 1, 2024.

As noted above, SEI devoted most of its principal brief to its second question presented (calculation of post-termination royalties), rather than to its first (entitlement to post-termination royalties). Because we resolve the first question against SEI, we need not reach the second: no amount of royalties can be owed absent an underlying entitlement to post-termination royalties.

SEI's third issue contends the district court erred by denying SEI leave to amend. But where, as here, a contract is unambiguous, Texas law forbids consideration of the sort of extrinsic evidence SEI proposed adding

---

[8] *See Seagull Energy E & P, Inc. v. Eland Energy, Inc.*, 207 S.W.3d 342, 345 (Tex. 2006) ("Our primary concern when interpreting a contract is to ascertain and give effect to the intent of the parties as that intent is expressed in the contract.").

[9] *See Farmers Grp., Inc. v. Geter*, 620 S.W.3d 702, 709 (Tex. 2021) ("The interpretation of an unambiguous contract is a question of law for the court.").

No. 25-50284

to its complaint.[10] Even if that weren't the law, the Agreement's integration clause would preclude it. The district court's Judgment is AFFIRMED.

_____

[10] *See Piranha Partners v. Neuhoff*, 596 S.W.3d 740, 749 (Tex. 2020).