# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

July 30, 2012

Lyle W. Cayce
Clerk

No. 10-50413

REBECCA GONZALEZ,

Plaintiff-Appellant

v.

FRESENIUS MEDICAL CARE NORTH AMERICA; ALFONSO CHAVEZ,
M.D.,

Defendants-Appellees

-------------------------------------------------------------------------------------------------------------

consolidated with
Case No. 10-51171

REBECCA GONZALEZ,

Plaintiff-Appellant

v.

FRESENIUS MEDICAL CARE NORTH AMERICA; ALFONZO CHAVEZ,
M.D.; LARRY RAMIREZ; BIO-MEDICAL APPLICATIONS OF TEXAS, INC.;
FRESENIUS MEDICAL CARE HOLDINGS, INC.,

Defendants-Appellees

Appeals from the United States District Court
for the Western District of Texas

Before GARZA, DENNIS, and HIGGINSON, Circuit Judges.

GARZA, Circuit Judge:

Plaintiff-Appellant Rebecca Gonzalez ("Relator") brought a qui tam action under the False Claims Act ("FCA"), 31 U.S.C. § 3729 et seq., against Defendants-Appellees Fresenius Medical Care North America, Fresenius Medical Care Holdings, Inc., Bio-Medical Applications of Texas, Inc. (collectively, "Fresenius"), and Alfonzo Chavez, M.D. Relator also brought retaliation claims against Fresenius and her former supervisor Larry Ramirez. The district court granted in part and denied in part the defendants' motions for judgment as a matter of law, and the jury returned a verdict in favor of the defendants on the remaining claims. The district court then awarded Fresenius $15,360 in attorney's fees from Relator's counsel under 28 U.S.C. § 1927. Relator now appeals the district court's judgment with respect to her FCA and retaliation claims. Relator's counsel also appeals the award of attorneys' fees. We affirm the judgment of the district court in all instances.

I

Fresenius is a provider of dialysis services to patients with end stage renal disease (ESRD).[1] Chavez is a nephrologist[2] serving as the medical director and attending physician at two of Fresenius's clinics. Relator's Fourth Amended Complaint alleged that while she was employed by Fresenius, Fresenius and Chavez submitted false claims to Medicare in violation of the FCA. Specifically, Relator alleged that Ramiro Devora and Arturo Orozco ("assistants"), two

---

[1] "[ESRD] is when the kidneys are no longer able to work at a level needed for day-to-day life" and "almost always comes after chronic kidney disease." END STAGE KIDNEY DISEASE, http://www.nlm.nih.gov/medlineplus/ency/article/000500.htm (last visited, Mar. 27, 2012). "The most common causes of ESRD in the U.S. are diabetes and high blood pressure[,]" and "[d]ialysis or kidney transplantation is the only treatment for this condition." Id.

[2] A nephrologist is a medical specialist in nephrology, a branch of medical science concerned with medical diseases of the kidney. STEDMAN'S MEDICAL DICTIONARY (27th ed. 2000).

non-physicians who worked for Chavez, performed tasks and made patient-care decisions at Fresenius clinics in violation of state and federal regulations, and that Chavez billed Medicare for his assistants' work. Relator also contended that, in return for Fresenius overlooking his illegal use of assistants, Chavez referred patients from his private practice to Fresenius in violation of federal anti-kickback laws. After filing her qui tam action, Relator filed a separate complaint against Fresenius and Ramirez alleging that, in retaliation for her qui tam action, she was harassed, threatened, and eventually forced to resign.

The district court consolidated Relator's qui tam and retaliation actions, and Fresenius and Chavez filed motions to dismiss portions of Relator's complaints. The court granted the motions, leaving the following causes of action from the FCA Complaint viable at the start of trial: Count 1 (knowingly presenting fraudulent or false claims in violation of the FCA, § 3729(a)(1)); Count 2 (knowingly making a false record or statement in presentation of false claims in violation of the FCA, § 3729(a)(2)); Count 3 (presenting false claims for Medicare reimbursement for services rendered in violation of the Stark Law, 42 U.S.C. § 1395nn); Count 6 (presenting false claims for Medicare reimbursement for services rendered in violation of the Anti-Kickback Act, 42 U.S.C. §§ 1320a-7b(b)); and Count 7 (conspiring to submit false claims in violation of the FCA, § 3729(a)(3)). The following causes of action from the Retaliation Complaint were viable at the start of trial: Count 1 (retaliation in violation of the FCA, § 3730(h)), as against Fresenius; Count 2 (retaliatory constructive discharge in violation of the FCA, § 3730(h)), as against Fresenius; and Count 3 (intentional infliction of emotional distress) as against Fresenius and Ramirez. Relator, Fresenius, and Chavez all filed motions for summary judgment, which the court carried through trial.

At the close of Relator's case-in-chief, Fresenius and Chavez moved for judgment as a matter of law. The district court granted the motions in part and

denied them in part, holding the defendants were entitled to judgment as a matter of law on Counts 1, 3, and 6 of the FCA Complaint, and Counts 1, 2, and 3 of the Retaliation Complaint. The court also concluded that, because Fresenius obtained judgment as a matter of law as to Count 1 of the FCA Complaint (knowingly presenting false claims, § 3729(a)(1)), only false claims by Chavez could form the basis for either Chavez's or Fresenius's liability under § 3729(a)(2) (false records or statements) or § 3729(a)(3) (conspiracy). The district court then submitted the following claims to the jury: Count 1 of the FCA Complaint (knowingly presenting false claims) as against Chavez only; Count 2 of the FCA Complaint (false records or statements) as against Chavez and Fresenius; and Count 7 of the FCA Complaint (conspiring to submit false claims) as against Chavez and Fresenius. The jury returned a verdict in favor of the defendants on all three counts.

Following the entry of judgment, all of the defendants moved for attorney's fees. Fresenius and Ramirez requested fees arising from their defense of Relator's retaliation claim, and Chavez requested fees for the entire lawsuit. The court awarded Fresenius $15,360 in attorney's fees from Relator's counsel under § 1927, finding that counsel unreasonably and vexatiously multiplied proceedings with respect to the retaliation suit. Relator timely appealed the district court's judgment in the FCA/retaliation case, and Relator's counsel separately appealed the award of attorney's fees. We consolidated the two appeals.

II

Relator first contends that the district court erred in granting Fresenius judgment as a matter of law on Count 1 of the FCA Complaint (knowingly presenting false claims, § 3729(a)(1)). She bases her argument on two separate legal theories: (1) that Fresenius falsely certified compliance with applicable statutes and regulations and (2) that Fresenius assisted in the presentation of

claims that were "grounded in fraud."[3]  We review the district court's grant of judgment as a matter of law de novo, applying the same legal standards as the district court.  Price v. Marathon Cheese Corp.,119 F.3d 330, 333 (5th Cir. 1997).  Judgment as a matter of law is appropriate after "a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue."  FED. R. CIV. P. 50(a).  "In evaluating such a motion, the court must consider all of the evidence in the light most favorable to the nonmovant, drawing all factual inferences in favor of the non-moving party, and leaving credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts to the jury."  Price, 119 F.3d at 333.

The False Claims Act is designed to permit "suits by private parties on behalf of the United States against anyone submitting a false claim to the Government."  Hughes Aircraft Co. v. United States ex rel. Schumer, 520 U.S. 939, 941 (1997).  The FCA imposes liability on an individual who:

> (1) knowingly presents, or causes to be presented, to an officer or employee of the United States . . . a false or fraudulent claim for payment or approval;
> (2) knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government; [or]

---

[3] Relator based her claims against Chavez on the theory that his claims were "factually" false; i.e., that some of Chavez's claims actually attributed work to him which was actually performed by his assistants.  The district court allowed claims against Chavez based on this theory to proceed to the jury. See United States ex rel. Gonzalez v. Fresenius Med. Care N. Am., 748 F. Supp. 2d 95, 117 (W.D. Tex. 2010).  The jury returned a verdict for defendants, and Relator does not challenge the jury verdict on appeal.

Relator also appeals the denial of her motion for summary judgment.  "We have held repeatedly that orders denying summary judgment are not reviewable on appeal where final judgment adverse to the movant is rendered on the basis of a subsequent full trial on the merits." Johnson v. Sawyer, 120 F.3d 1307, 1316 (5th Cir. 1997).  The exception to this general rule that Relator cites is not applicable in this case.  See Becker v. Tidewater, Inc., 586 F.3d 358, 365 (5th Cir. 2009) (basing its review of the denial of summary judgment on the fact that the lower court conducted a bench trial).

(3) conspires to defraud the Government by getting a false or fraudulent claim allowed or paid.

31 U.S.C. § 3729(a)(1)-(3) (2008).[4] In determining whether liability attaches under the FCA, this court asks "(1) whether there was a false statement or fraudulent course of conduct; (2) made or carried out with the requisite scienter; (3) that was material; and (4) that caused the government to pay out money or to forfeit moneys due (i.e., that involved a claim)." United States ex rel. Longhi v. Lithium Power Techs., Inc., 575 F.3d 458, 467 (5th Cir. 2009) (quoting United States ex rel. Wilson v. Kellogg Brown & Root, Inc., 525 F.3d 370, 376 (4th Cir. 2008)) (internal quotation marks omitted).

"[C]laims for services rendered in violation of a statute do not necessarily constitute false or fraudulent claims under the FCA." United States ex rel. Thompson v. Columbia/HCA Healthcare Corp., 125 F.3d 899, 902 (5th Cir. 1997). However, under a false certification theory, a defendant may be liable where "the government has conditioned payment of a claim upon a claimant's certification of compliance with, for example, a statute or regulation" and the claimant "falsely certifies compliance with that statue or regulation." Id. Relator alleged that Fresenius submitted claims based on a referral scheme that violated the Anti-Kickback Act, the Stark Law, and a host of federal and state regulations that govern dialysis facilities. According to Relator, Fresenius

---

[4] The district court addressed the 2009 amendments to the FCA found in the Fraud Enforcement Recovery Act ("FERA"), Pub. L. No. 111-21, § 386, 123 Stat. 1617 (2009). The district court concluded that (1) the amendments did not apply to conduct occurring before the enactment of FERA and (2) because Relator's "claims" were not pending on June 7, 2008, FERA's retroactivity provision did not apply. See Gonzalez, 748 F. Supp. 2d at 106-08. Similarly, amendments to the FCA contained in the Patient Protection and Affordable Care Act of 2010 do not apply retroactively. See Graham Cnty. Soil & Water Conservation Dist. v. United States ex rel. Wilson, 130 S. Ct. 1396, 1400 n.1 (2010); Barber v. Paychex, Inc., 439 F. App'x 841, 842 n.1 (11th Cir. 2011).

falsely certified compliance with these statutes and regulations in its annual cost reports.[5]

On the record before us, Fresenius's cost reports would present a difficult basis for FCA liability. Evidence adduced at trial showed that, although the cost reports were a condition of Medicare participation and failure to submit accurate cost reports would trigger Medicare's remedial scheme, the cost reports would not cause payment to be withheld. Only two witnesses testified about the cost reports: one testified that the cost reports were not a condition of payment, the other that the cost reports were only capable of affecting payment the following year. Neither did Relator offer any evidence that a statute or Medicare regulation conditioned payment on the cost report's certification.[6]

This challenging factual predicate for FCA liability, based on these attenuated cost report submissions, need not be resolved because we affirm the district court's separate and sufficient conclusion that the Relator did not demonstrate that Fresenius and Chavez violated the FCA by falsely certifying that they were in compliance with the Anti-Kickback Statute because the Relator did not provide legally sufficient evidence that Fresenius and Chavez

---

[5] Relator concedes that the electronic claim forms submitted by Fresenius did not contain certification provisions.

[6] The United States, as amicus curiae, contends that the district court erred in treating the question of whether the cost reports were a condition of payment as a question of fact. We disagree. This court has previously treated this precise question as a fact issue. See Thompson, 125 F.3d at 902-03 ("We are unable to determine from the record before us whether, or to what extent, payment for services identified in the defendants' annual cost reports was conditioned on the defendants' certifications of compliance. We . . . remand to the district court for further factual development."). Because the facts of this case did not demonstrate an underlying illegal kickback scheme, we do not address the issue of implied certification. See, e.g., United States ex rel. Marcy v. Rowan Companies, Inc., 520 F.3d 384, 389 (5th Cir. 2008); United States ex rel. Willard v. Humana Health Plan of Tex., 336 F.3d 375, 381-82 (5th Cir. 2003); United States ex rel. Stebner v. Stewart & Stephenson Servs., Inc., 144 F. App'x 389, 394 (5th Cir.2005).

knowingly and willfully entered into an illegal kickback scheme involving dialysis referrals. As the district court explained:

> Relator attempted to show that, by permitting Devora and Orozco to work in the clinics and assist Chavez with his duties, Fresenius provided Chavez with remuneration in exchange for referral of patients. Based on the evidence at trial, in the light most favorable to the Relator, the jury would be entitled to believe that Chavez received a benefit. But Relator did not present any witness or document that would promote the inference of criminal intent to induce referrals. Furthermore, the evidence showed that Chavez's volume of referrals remained constant during the period of time when a medical assistant was working in the clinic and when one was not.

Gonzalez, 748 F. Supp. 2d at 113 n.31. Specifically, the assistants only worked with Chavez in 2000-2001 and 2005-2006. Chavez referred the same number of patients to Fresenius's clinics whether or not he had these assistants working for him. Chavez also referred patients to Fresenius when he had a licensed medical assistant working for him. Additionally, the assistants were employed and paid by Chavez; not Fresenius. The district court did not err in concluding that there is insufficient evidence to establish that the assistants' ability to work at the clinic induced Chavez to refer patients to Fresenius. For these reasons, we also uphold the district court's grant of judgment on the Relator's Anti-Kickback Act claim.

Alternatively, Relator argues that Fresenius's claims were false because they were "grounded in fraud" and "per se tainted," even if Fresenius did not certify statutory compliance. At the district court, Relator based this theory on this court's statement in Longhi that "[i]n certain cases, FCA liability may be imposed 'when the contract under which payment is made was procured by fraud.'" Longhi, 575 F.3d at 467-68 (quoting United States ex rel. Willard v. Humana Health Plan of Tex., Inc., 336 F.3d 375, 384 (5th Cir. 2003)). The district court rejected this argument, reasoning that Longhi is limited to the

fraudulent inducement context. See id. at 468 ("Under a fraudulent inducement theory, although the Defendants' 'subsequent claims for payment made under the contract were not literally false, [because] they derived from the original fraudulent misrepresentation, they, too, became actionable false claims.'" (quoting United States ex rel. Laird v. Lockheed Martin Eng'g & Science Servs. Co., 491 F.3d 254, 259 (5th Cir. 2007))).

Relator contends that the district court construed her argument too narrowly, and she directs this court to United States ex rel. Marcus v. Hess, 317 U.S. 537 (1943), in which the Supreme Court explained that the three provisions of § 3729(a) "considered together, indicate a purpose to reach any person who knowingly assisted in causing the government to pay claims which were grounded in fraud, without regard to whether that person had direct contractual relations with the government." Hess, 317 U.S. at 544-45 (emphasis added). Relator contends that in United States ex rel. Riley v. St. Luke's Episcopal Hosp., 355 F.3d 370 (5th Cir. 2004),[7] and United States ex rel. Grubbs v. Kanneganti, 565 F.3d 180 (5th Cir. 2009),[8] this court employed similar "grounded in fraud"

---

[7] In Riley, a nurse brought a qui tam action under the FCA against her employer hospital and several physicians, alleging that they filed claims with Medicare and the Civil Health and Medical Program of the Uniformed Services for services that were either medically unnecessary or rendered by an unlicensed physician. Riley, 355 F.3d 373-74. The district court dismissed for failure to state a claim, and this court reversed, explaining that "[t]he FCA applies to anyone who knowingly assist[s] in causing the government to pay claims grounded in fraud . . . ." Id. at 378 (quoting Peterson v. Weinberger, 508 F.2d 45, 52-53 (5th Cir. 1975)) (internal quotation marks omitted). We stated that liability could attach to "defendants [who] assisted one another and cooperated in a scheme or pattern of billing for and covering up these allegedly false-claim items. . . . Under the 'knowing assistance' standard of Hess . . . these allegations suffice to implicate all Defendants." Id.

[8] In Grubbs, a psychiatrist brought a qui tam action against a hospital and seven of the hospital's doctors, alleging that the hospital and doctors billed Medicare and Medicaid for services not performed. 565 F.3d at 183-84. The district court dismissed the claims, finding that the complaint had not identified the person who actually submitted the bills. Id. at 190 n.31. This court reversed, explaining that "[w]hether a doctor put the claims in motion by entering records of unprovided or unnecessary services into the hospital's standard billing system, or whether the doctor actually hit the 'send' button that presents the bills to the

language which supports § 3729(a)(1) liability for Fresenius based on Chavez's Medicare claims. Relator argues that, in light of these cases, Fresenius may be held liable under § 3729(a)(1), not just for submitting false claims, but for causing the presentation of Chavez's claims by assisting in the allegedly false billing scheme. Under this theory, if Relator adduced evidence on the basis of which a reasonable jury could conclude that Fresenius in any way participated in the scheme, and the scheme produced any potentially false claims, then Fresenius's liability under (a)(1) should have gone to the jury.

Relator reads too much into Hess, Riley, and Grubbs. In Hess, the Supreme Court stated that the three FCA provisions considered together evidence a congressional intent for the FCA to reach all parties knowingly involved in a fraudulent scheme. See Hess, 317 U.S. at 544. In this case, the FCA did in fact reach Fresenius. Relator's claims against Fresenius under (a)(2) and (a)(3) proceeded to the jury. Second, an interpretation of the FCA that imposed (a)(1) liability for mere participation in a false billing scheme would arguably render superfluous (a)(2) and (a)(3) liability for producing false records and conspiring to submit false claims, activities which necessarily constitute participation. We explained in Grubbs that a doctor "can cause the fraud by putting a fraudulent record into a system" and by "entering records of unprovided or unnecessary services." Grubbs, 565 F.3d at 190 n.31. This is the type of activity which § 3729(a)(2) was intended to reach. Although a defendant may be held liable under the FCA for engaging in a "fraudulent course of conduct" which does not result in a false claim, this type of liability is, as the district court noted, limited to the fraudulent inducement context found in

---

Government, does not change the nature of the fraud." Id.

Longhi. The Supreme Court's decision in Hess and our decisions in Riley and Grubbs do not counsel otherwise.[9]

We also reject Relator's argument that the district court improperly instructed the jury. Because Relator's counsel timely objected to the instruction at trial, we review for abuse of discretion. See Price v. Rosiek Constr. Co., 509 F.3d 704, 708 (5th Cir. 2007). "A challenge to jury instructions must demonstrate that the charge as a whole creates substantial and ineradicable doubt whether the jury has been properly guided in its deliberations." Id. (quoting Thomas v. Tex. Dep't of Criminal Justice, 297 F.3d 361, 365 (5th Cir. 2002)). The contested jury instruction read as follows:

> Dr. Chavez may delegate to a qualified and properly trained person acting under his supervision, any medical act that a reasonable and prudent physician would find within the scope of sound medical judgment to delegate if, in Dr. Chavez's opinion, all of the following conditions are met:
> 1. The act
>     a. can be properly and safely performed by the person to whom the medical act is delegated;
>     b. is performed in its customary manner; and
>     c. is not in violation of any other statute.
> And
> 2. The person to whom the delegation is made does not represent to the public that the person is authorized to practice medicine.

On appeal, Relator does not contend that any of the instruction is legally erroneous. Indeed, the language of the instruction quotes verbatim Texas Occupations Code § 157.001. Relator instead contends that the issue of

---

[9] Relator also challenges the district court's conclusion that, even if Relator had shown false certification or that a claim was "grounded in fraud," she had not shown that Fresenius and Chavez actually violated the Anti-Kickback statute. Relator cites the Patient Protection and Affordable Care Act of 2010, which provides that violations of the Anti-Kickback statute automatically render a claim false, but as discussed above the Affordable Care Act only applies to FCA claims filed after its enactment. For claims filed before then, our court does not recognize automatic FCA liability for Anti-Kickback violations. See Thompson, 125 F.3d at 902.

delegation of duties by a physician is irrelevant, and that the jury, having returned a verdict in less than ninety minutes, was obviously misled by the instructions. In other words, Relator seems to contend that the instruction distracted the jury from the issue of whether Chavez falsely billed Medicare for services provided by Devora and Orozco, and led the jury to end its inquiry upon deciding that Chavez was allowed by law to delegate.

But in addition to the aforementioned instruction, the district court also instructed the jury that Chavez knowingly submitted a false claim if he "billed for face-to-face patient interactions that [he] himself never performed," and the court instructed the jury that it could hold Chavez or Fresenius liable if it found that either of them "made, used, or caused to be made or used a false record or statement to get a false or fraudulent claim paid[.]" Relator has not shown that the charge "create[d] substantial and ineradicable doubt whether the jury [was] properly guided in its deliberations." Price, 509 F.3d at 708.

### III

We turn to Relator's retaliation claims and the resultant award of attorney's fees. Section 3730 of Title 31 provides the relevant cause of action:

> Any employee who is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment by his or her employer because of lawful acts done by the employee on behalf of the employee or others in furtherance of an action under this section, including investigation for, initiation of, testimony for, or assistance in an action filed or to be filed under this section, shall be entitled to all relief necessary to make the employee whole . . . .

31 U.S.C. § 3730(h) (2008). The district court concluded that, even if Relator had been threatened, harassed, and discriminated against, she had nevertheless produced insufficient evidence that Fresenius or Ramirez actually knew of her qui tam action, and granted the defendants' motion for judgment as a matter of law. On appeal, Relator again offers a bald assertion that management knew of

the lawsuit and argues in the alternative that we should presume knowledge because her FCA complaint was unsealed prior to her termination. Relator does not offer evidence or authority in support of either proposition. Additionally, Relator expressly disclaimed in attorney fee proceedings her contention, central to her retaliation claim, that Ramirez ordered her to assist in the alleged fraud.[10] Moreover, Relator fails to address the district court's conclusion that Fresenius had a legitimate basis for taking disciplinary action, including allegations that Relator violated Fresenius's theft policies and claimed hourly wages while on workers compensation. For all of these reasons, Relator's retaliation claims are without merit.

Relator's counsel also appeals the district court's award of sanctions under § 1927 in connection with Relator's retaliation suit. Section 1927 provides:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927. Section 1927 sanctions are not to be awarded lightly. They require "evidence of bad faith, improper motive, or reckless disregard of the duty owed to the court." Edwards v. Gen. Motors Corp., 153 F.3d 242, 246 (5th Cir. 1998). This court reviews the district court's award of sanctions under § 1927 for abuse of discretion. Cambridge Toxicology Group, Inc. v. Exnicios, 495 F.3d 169, 180 (5th Cir. 2007).

Relator's inconsistent statements with respect to whether she had refused requests to help cover up the fraud were central to the attorney fee proceedings. Relator initially alleged that she had been directed to participate in the defendants' alleged Medicare fraud. The complaint specifically referenced a July

---

[10] See discussion of Relator's trial testimony infra.

3, 2007, letter to Ramirez in which Relator said that she would not lie to the Medicare authorities, would not help cover up the fact that medical assistants were performing some of the work, and would not be coming back to work under those conditions.

Relator's story then changed during discovery. When asked in deposition testimony if she had ever been asked to lie to Medicare auditors or ever felt like it was a job requirement that she assist in fraud, Relator replied in the negative. After the deposition, Relator's counsel submitted an errata sheet containing 101 corrections to Relator's testimony, some of which again changed Relator's answers to match her original complaint allegations that her supervisors wanted her to lie to Medicare authorities.

The defendants then moved to strike the errata sheet from the record and to re-depose Relator. They also requested sanctions under § 1927. The magistrate judge denied in part and granted in part the defendants' motion, determining that the errors were presumably made in good faith, that sanctions were unnecessary, and that the errata sheet need not be stricken from the record. The magistrate judge also ordered that Relator be re-deposed at no cost to the defendants. During her second deposition, Relator maintained that her July 3 letter accurately reflected the situation at Fresenius.

At trial, Relator's story changed yet again. She testified that she had never been asked to lie, and that her answers in the first deposition had been accurate. She testified that her attorney had "literally word[ed]" some of the errata sheet changes and had also helped her write the July 3 letter referenced in her complaint. The district court inferred bad faith on the part of counsel, concluding that counsel had helped Relator push a meritless claim to trial. On this basis, the district court awarded sanctions.

Counsel argues on appeal that Relator was entitled to submit an errata sheet and make substantive changes to her deposition under Federal Rule of

Civil Procedure 30(e). We do not necessarily disagree, but the only question for our purposes is whether the district court abused its discretion in concluding that Relator's counsel unreasonably and vexatiously multiplied proceedings. We find no abuse of discretion. The district court assumed good faith in the initial filing of the complaint but noted that counsel should at least have developed questions about the merits of Relator's claim when she disclaimed a critical allegation from her complaint in the first deposition. Additionally, Relator's testimony at trial supported the district court's conclusion that counsel exerted improper influence over the drafting of the errata sheet. Although clients do sometimes make substantive missteps in deposition testimony which may be corrected with an errata sheet, attorneys may not use an errata sheet to push a case to trial where the client no longer adheres to the allegations supporting the claim. See Norelus v. Denny's, Inc., 628 F.3d 1270, 1281-82 (11th Cir. 2010). The evidence in the record before us supports the district court's conclusion that Relator's counsel did just that.[11]

We are likewise unpersuaded by counsel's argument that the defendants' failure to file a motion for summary judgment at the close of discovery somehow precludes the award of sanctions. The district court denied the defendants' motion to strike the errata sheet from the record, and the defendants did not have any way of knowing that Relator would again change her testimony at trial. Similarly, we reject counsel's broader contention that if a case has enough merit to proceed to trial it cannot possibly be so meritless as to warrant sanctions. This argument turns § 1927, designed to prevent the vexatious multiplication of proceedings, on its head. No multiplication of proceedings

---

[11] Counsel also contends that the district court was bound by the magistrate judge's decision not to award sanctions during discovery. However, at the time the magistrate judge issued findings, Relator had not yet testified as to the full extent of counsel's role in helping her craft her complaint and testimony.

would be more vexatious than one which gave a frivolous claim the appearance of trial-worthy merit.

Lastly, we reject counsel's assertion that the district court did not afford due process before awarding sanctions. We have held that where counsel "does not contend that any factual dispute exists with respect to his actions for which § 1927 sanctions were imposed" and "those actions appear in the record and briefs before the district court," a hearing may not be helpful. See Travelers Ins. Co. v. St. Jude Hosp. of Kenner, La., Inc., 38 F.3d 1414, 1418 (5th Cir. 1994). Furthermore, the judge who awarded sanctions was the same judge who presided over Relator's FCA and retaliation cases and had become familiar with all facets of the litigation. See id. ("[B]y having presided over the underlying action, as well as related actions, the district court was most familiar with . . . the parties, and the litigation."); United States v. Nesglo, Inc., 744 F.2d 887, 891 (1st Cir. 1984) ("Another factor that militates towards finding that a hearing was unnecessary is the degree of familiarity the court had with the parties and the litigation."). Relator's counsel received notice that the district court was considering sanctions in the form of opposing counsel's motion, and Relator's counsel responded to the motion. No hearing was necessary.

IV

To summarize, the district court was correct to grant the defendants' motion for judgment as a matter of law on Relator's FCA claims, and the district court's FCA jury instructions were not in error. Neither did the district court err in granting the defendants' motion for judgment as a matter of law on Relator's retaliation claims. Finally, the district court did not abuse its discretion in awarding sanctions under § 1927. We AFFIRM.