# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

July 15, 2013

No. 10-50771

Lyle W. Cayce
Clerk

BRYAN OSCAR COOPER,

Plaintiff - Appellant

v.

WARDEN PAUL MORALES, In His Individual and Official Capacity;
DEBRA GLOOR, Medical Facility Administrative Manager, In Her
Individual Capacity; JUAN TREVINO, Correctional Officer, In His Individual
and Official Capacity; J. GARCIA, Step Two Grievance Respondent, In His
Individual and Official Capacity; SERGEANT HIPOLITO N. RODRIGUEZ,
In His Individual and Official Capacity; JOHN DOE 1, Sergeant, In His
Individual and Official Capacity; JOHN DOE 2, Correctional Medical
Infirmary Officer, In His Individual and Official Capacity; ROBERT G.
CANTU, Correctional Officer, In His Individual and Official Capacity,

Defendants - Appellees

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:08-CV-738

Before JOLLY, PRADO, and HIGGINSON, Circuit Judges.

PER CURIAM:[*]

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

No. 10-50771

In this 42 U.S.C. § 1983 action based upon an "excessive punishment" violation of the Eighth Amendment, Plaintiff–Appellant Inmate Bryan Cooper ("Cooper") appeals the district court's grant of Defendant–Appellee Corrections Officer Juan Trevino's ("Trevino") motion for judgment as a matter of law ("JMOL"), which set aside a jury verdict of $30.00 in compensatory damages and $3,500.00 in punitive damages and granted a new trial. Because we hold that there was a sufficient factual basis for a reasonable jury to find for Cooper and the verdict was not against the great weight of the evidence, we REVERSE the district court's grant of JMOL and conditional grant of the motion for a new trial. We REMAND for reinstatement of the jury verdict and entry of judgment in favor of Cooper.

I.

In a § 1983 civil rights complaint against Officer Trevino and other prison officials, Bryan Cooper alleged that Officer Trevino assaulted him, violating his Eighth Amendment right to be free from excessive punishment. Cooper testified that on December 31, 2007, as Officer Trevino escorted Cooper to the medical department ("Medical") to receive a dose of his twice-daily insulin shots, Trevino bumped Cooper repeatedly against a fence as they walked. Cooper did not allege that this bumping caused him any injury. Cooper testified that once they arrived at Medical, an infirmary officer directed Trevino to escort Cooper to the side so that two other inmates then inside Medical could be escorted out. Cooper testified that while Trevino was moving him out of the way of the other two inmates, Cooper gave his inmate number to an infirmary officer, as requested. Then, Cooper testified, Trevino "grabbed [him] and slammed [him] to the floor." Cooper testified that Trevino claimed Cooper had jerked away from Trevino's grasp, which Cooper denied. Next, Trevino helped Cooper off the floor before placing him face-first against the wall, pressing his own body behind Cooper.

2

No. 10-50771

Cooper testified that after Trevino moved him toward the inner door, Trevino told Cooper he was refusing insulin (presumably due to his behavior).

Cooper lay down on the floor to avoid being removed before receiving his insulin shot. Trevino then got on top of Cooper, using his own body to hold Cooper to the floor, and placed his riot baton behind Cooper's neck to hold Cooper's head to the floor. Cooper testified that Officer Robert Cantu[1] held his legs while Cooper was pinned to the ground. The officers then helped Cooper to his feet, and faced him against the wall again. After that, Cooper was taken into Medical and given his insulin shot by Nurse White before being escorted back to his cell. Later in the day, Cooper started experiencing pain. He was taken back to Medical, and then to a nearby hospital, where he was diagnosed with two fractured ribs and a dislocated elbow, which x-rays later confirmed.

Trevino's testimony differs from Cooper's in many respects. Trevino testified that Cooper was difficult to manage on the escort to Medical and that he called out racial epithets at Trevino. Cooper tried to avoid Trevino's grip several times, in violation of security protocol. When Cooper succeeded in breaking Trevino's grip, Trevino testified that he followed protocol and faced Cooper to the wall and told him that failure to "cut it out" would be viewed as an insulin refusal. When Cooper continued to be difficult and loud Trevino started to escort Cooper out of Medical, at which point, Cooper lay down on the ground. From there, Trevino got on top of Cooper to restrain him, consistent with procedures. Trevino testified that he and another officer helped Cooper to his feet. Then Trevino took Cooper into Medical, where he received his insulin shot. Trevino testified that he then took Cooper back to his cell.

Cooper subsequently sued Texas Department of Criminal Justice ("TDCJ") employees, alleging excessive force in violation of the Eighth Amendment and

---

[1] Cantu was originally named as a defendant. Claims against him were dismissed by the district court following a summary judgment motion.

No. 10-50771

42 U.S.C. § 1983. The district court granted summary judgment as to several TDCJ defendants. Only the claims against Trevino proceeded to trial. Before the case was submitted to the jury, the district court denied Trevino's motion for JMOL. The jury found for Cooper and awarded him $30.00 in compensatory damages and $3,500.00 in punitive damages. Specifically, the jury held that Trevino subjected Cooper to excessive punishment in violation of the Eighth Amendment and that Trevino was not entitled to qualified immunity. After trial, Trevino filed a renewed motion for judgment as a matter of law and, in the alternative, a motion for a new trial. The trial court granted JMOL for Trevino and conditionally granted his alternative motion for a new trial. Cooper has timely appealed, seeking reinstatement of the jury verdict. He argues that the district court abused its discretion in granting Trevino's motion for JMOL.

The district court had federal question jurisdiction over Cooper's claim under 28 U.S.C. §§ 1331 and 1343(a)(3). This court has appellate jurisdiction under 28 U.S.C. § 1291.

## II.

We review a district court's ruling on a motion for judgment as a matter of law de novo. *Burch v. Coca-Cola Co.*, 119 F.3d 305, 313 (5th Cir. 1997). In deciding motions for judgment as a matter of law, the district court applies the standard established in *Boeing Co. v. Shipman*, 411 F.2d 365 (5th Cir. 1969) (en banc), *overruled in part on other grounds*, *Gautreaux v. Scurlock Marine, Inc.*, 107 F.3d 331, 336 (5th Cir. 1997) (en banc), and on appeal from such decisions, this court applies the same *Boeing* standard. *Allied Bank-W., N.A. v. Stein*, 996 F.2d 111, 114 (5th Cir. 1993). The district court's burden in granting judgment as a matter of law is heavy. *Id.* *Boeing* directs us to:

> consider all of the evidence—not just that evidence which supports the non-mover's case—but in the light and with all reasonable inferences most favorable to the party opposed to the motion. If the facts and inferences point so strongly and overwhelmingly in favor

4

No. 10-50771

> of one party that the Court believes reasonable men could not arrive at a contrary verdict, granting of the motions is proper.

411 F.2d at 374. Said another way, "we view the entire trial record in the light most favorable to the non-movant, drawing reasonable factual inferences in its favor." *Burch*, 119 F.3d at 313. A district court may not grant a Rule 50 motion "unless a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." *Ellis v. Weasler Eng'g Inc.*, 258 F.3d 326, 337 (5th Cir. 2001). This court does not weigh witness credibility and disregards all evidence favorable to the moving party that the jury is not required to believe. *Reeves v. Sanderson Plumbing Prods., Inc*, 530 U.S. 133, 135 (2000). This court reviews a jury's verdict for sufficiency of the evidence by determining whether

> reasonable and fair-minded [jurors] in the exercise of impartial judgment might reach different conclusions . . . . A mere scintilla is insufficient to present a question for the jury . . . . However, it is the function of the jury as the traditional finder of facts, and not the Court, to weigh conflicting evidence and inferences, and determine the credibility of witnesses.

*Delano-Pyle v. Victoria Cnty., Tex.*, 302 F.3d 567, 572 (5th Cir. 2002) (citation omitted). A Rule 50 motion should not be granted unless there is no legally sufficient evidentiary basis for a reasonable jury to find for the non-moving party. *Id.*

The trial court held that Cooper's evidence was not sufficient, as a matter of law, to meet the burden of showing Trevino's actions were outside the scope of qualified immunity. In the Fifth Circuit, a government official is entitled to qualified immunity unless all reasonable officials would have realized that the challenged conduct was proscribed by law. *Dudley v. Angel*, 209 F.3d 460, 462 (5th Cir. 2000). Once a government official has asserted qualified immunity, as Trevino did here, the burden shifts to the plaintiff to show that qualified

immunity does not bar recovery.[2] *Salas v. Carpenter*, 980 F.2d 299, 306 (5th Cir. 1992).

The trial court examined each aspect of the night in question, ably explaining why most were insufficient as a matter of law to support the verdict. We agree with the trial court's analysis on all but one. We first briefly recount those with which we agree. First, Cooper testified that Officer Trevino repeatedly bumped him into the fence while escorting him to Medical. To the extent that Cooper alleges an Eighth Amendment violation from this bumping, judgment as a matter of law could be properly entered in favor of Trevino, because Cooper does not complain of actionable injury from these actions.

Second, Cooper testified that Trevino placed him against the wall, and planted his body against Cooper's, pressing Cooper into the wall face-first. Cooper complained of no injury from being pressed against the wall. Moreover, Warden Barbosa testified that facing an inmate against a wall is consistent with policy, and done to restrain and maintain physical control over an inmate. To the extent Cooper asserts an Eighth Amendment claim based on Trevino pressing him against the wall outside of Medical, judgment as a matter of law could be entered in favor of Trevino.

Third, Cooper testified that he lay down on the floor to keep the guards from removing him from Medical before he had received his insulin shot. Cooper testified that after he lay down, Trevino got on top of Cooper, while another officer, Cantu, restrained Cooper's legs. Cooper testified that Trevino told Cooper that his behavior amounted to an insulin refusal. After Cooper reasserted, from

---

[2] To discharge this burden, a plaintiff must claim that defendants committed a constitutional violation under current law and that defendants' actions were objectively unreasonable in the light of the law that was clearly established at the time of the actions complained of. *Club Retro LLC v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009) (internal quotation marks omitted). After trial, the jury rejected Trevino's defense of qualified immunity and, on appeal, the issue has been subsumed into the arguments that straighforwardly address the merits.

his prone position on the ground, that he wanted to receive insulin, Trevino restrained Cooper's head with his riot baton.  The trial court held, and we agree, that Cooper presented no evidence that Trevino was acting inconsistently with prison restraining policy when Trevino placed his body over Cooper's body and pressed his riot baton against Cooper's neck.  Cooper offered no testimony to contradict Warden Barbosa's testimony that inmates are not permitted to lie down while being escorted and that an inmate can be restrained against the wall or the floor to ensure the inmate cannot harm himself or others.  Further, Barbosa testified that an officer can use his riot baton to restrain an inmate. Cooper offered no evidence to show that it is not objectively reasonable for a correctional officer to restrain an inmate who lies down.  Thus, these actions were reasonable procedures within the scope of Trevino's qualified immunity.

Cooper, however, also contends that Trevino slammed him to the ground at some point during the episode.  Slamming an inmate to the ground in these circumstances could be viewed by a jury as outside the scope of objectively reasonable conduct that would be protected by qualified immunity. Nevertheless, the trial court held that the evidence was insufficient and too contradictory to support a finding that Trevino slammed Cooper to the ground.  Although the issue is close, we disagree.

We first examine the evidence Cooper presented.  Cooper testified that Officer Trevino grabbed him and slammed him to the floor in between bumping him along the fence and pressing him against the wall.  Cooper testified that Trevino's stated reason for doing so was that Cooper jerked away from Trevino, which Cooper denied.  Cooper also testified that Trevino kneed him in the side.

Cooper provides evidence that corroborates his testimony. Although he was not called as a witness at trial, fellow inmate Cristobal Martinez's statement was included in the use of force report introduced into evidence.  In his statement, Martinez states that he was present at Medical and saw Trevino "slam" Cooper

to the floor.[3]  Martinez stated that he saw Trevino knee Cooper in the stomach. The trial court held that Martinez's assertion about Cooper being kneed in the stomach was not corroborated, even by Cooper.  However, taking the evidence in the light most favorable to Cooper, as required, a fact-finder could reasonably conclude that not only does Martinez corroborate Cooper's testimony about being slammed to the ground, but that Martinez and Cooper used different terms to describe the same event when one states Trevino kneed Cooper in the side and one states Trevino kneed Cooper in the stomach.  The trial court dismisses Martinez's statement by insinuating that one cannot be kneed in the stomach if his stomach is against the ground.  However, the jury could reasonably have concluded that both Martinez and Cooper are referring to the middle portion of the body, or torso.  What the district court interpreted as conflicting, taken in the light most favoring the non-movant, is actually corroborating.

Further, Cooper testified that the officers' failure to file a discipline report is telling.  According to Cooper, when an inmate violates procedure, the officers are required to file a discipline report.  No such report was filed. Cooper also offered into evidence the TDCJ's "Use of Force Report" issued against Trevino as a result of his actions on the night in question. Because he failed to report a "Major Use of Force" against an inmate, Trevino was put on disciplinary probation.  Cooper argued that the officers' failure indicates that either Cooper was not violating procedure—which would call into question the propriety of Trevino laying on Cooper and using his riot baton to restrain his head—or that Trevino did not file a report about the incident to avoid scrutiny into his own actions.

---

[3] However, Martinez also stated that Cooper did not receive his insulin, which is contradicted by all other parties to the events.  Even Cooper acknowledges that he was ultimately given his insulin.

We acknowledge that Cooper's evidence is not perfectly consistent. Most damaging to his position on appeal is his inconsistent chronology. In his written "offender grievance," Cooper states he laid down to avoid being removed from Medical first, and then Trevino slammed him to the floor second. But his testimony at trial recounts the events in the opposite order. While this reversal of the order of events does not engender confidence in his testimony, the court does not determine witness credibility. The jury had before it the evidence of Cooper's chronological inconsistency. A reasonable jury could have concluded that despite his chronological inconsistencies, Cooper established that at some point Trevino slammed Cooper to the floor, injuring his ribs and elbow.

Weighing all the evidence most favorably to Cooper, as we are required to do, there is sufficient evidence—including Cooper's testimony and Martinez's witness statement—to support a finding that Trevino unnecessarily slammed Cooper to the floor, injuring him. Although it is not required to support a verdict, Cooper presented evidence which would support a conclusion that Trevino felt provoked into being rough with Cooper. Cooper and Trevino testified that Cooper was directing racial epithets at Trevino during the escort, and Trevino alleges that Cooper was trying to break free of Trevino's grip. Trevino testified that Cooper was disruptive enough that Trevino took Cooper's behavior as an indication that he was refusing his insulin treatment. The jury could reasonably have determined that Trevino grew so irritated with Cooper that he slammed him to the ground.

We do not re-weigh the evidence to replace the jury's verdict with our own. Although we might not have reached the same conclusion, there is a legally sufficient basis for a reasonable jury to find for Cooper.

### III.

Having concluded that the trial court erred in granting JMOL, we turn to the court's conditional grant of a new trial. *See Lloyd v. Ga. Gulf Corp.*, 961 F.2d

No. 10-50771

1190, 1196 (5th Cir. 1992) ("Because we have decided to reverse the [district court's grant of judgment as a matter of law], we must also address the merits of the district court's decision to grant a conditional new trial."). Although the standard for granting a new trial is less stringent than the standard for granting JMOL, *Keeler v. Richards Mfg. Co.*, 817 F.2d 1197, 1200 (5th Cir. 1987), and review is for abuse of discretion, *Smith v. Transworld Drilling Co.*, 773 F.2d 610, 613 (5th Cir. 1985), we exercise "particularly close scrutiny" over a district court's grant of a new trial on evidentiary grounds in order "to protect the litigants' right to a jury trial," *Shows v. Jamison Bedding, Inc.*, 671 F.2d 927, 930 (5th Cir. 1982). "[T]o prevent the trial judge from simply substituting his judgment for that of the jury, . . . new trials should not be granted on evidentiary grounds unless, at a minimum, the verdict is against the great—not merely the greater—weight of the evidence." *Id.* Where, as here, the issues are few and uncomplicated, the case hinges on the weight given to conflicting testimony, and the evidence is not unfairly prejudicial, "our deference to the jury is reinforced by our confidence in its ability to understand the issues, to evaluate credibility and sort through conflicting testimony, and to act reasonably and fairly in the absence of prejudicial influences." *Id.* at 931. Viewing the evidence in this context, we conclude that the jury's verdict was not against the great weight of the evidence, and that a new trial should not have been granted.

IV.

Finally, we review *de novo* the district court's judgments as a matter of law that "[t]he evidence, taken as a whole, does not show that Trevino's actions were so shocking and offensive to support a punitive damages award," *Gonzalez v. Fresenius Med. Care N. Am.*, 689 F.3d 470, 474 (5th Cir. 2012), and that the $3,500 punitive damages award rendered by the jury was "excessive under prevailing standards," *Cooper Indus., Inc. v. Leatherman Tool Grp.*, 532 U.S. 424, 436 (2001).

No. 10-50771

As we have previously observed, when a jury finds constitutionally excessive force in violation of the Eighth Amendment, it makes "the threshold finding of 'evil intent' or 'callous indifference' needed to warrant punitive damages, because the threshold standard for excessive-force liability—that the force was applied 'maliciously and sadistically for the very purpose of causing harm'—is substantially indistinguishable from the threshold standard for punitive damages." *Jones v. Conner*, 233 F.3d 574, at *1 (5th Cir. 2000) (per curiam) (unpublished disposition) (citing *Smith v. Wade*, 462 U.S. 32 (1983)). The court's instructions to the jury reflect that congruity: the court instructed that (1) to prove an Eighth Amendment excessive-force violation, the jury must find that Trevino "used force against [Cooper] maliciously and sadistically for the very purpose of causing plaintiff harm," and (2) to award punitive damages, the jury must find that Trevino "acted with malice." Given our earlier conclusion that the evidence was sufficient as a matter of law to support the jury's finding of Eighth Amendment excessive-force liability, it follows that the jury had the discretion to award punitive damages. *Smith*, 462 U.S. at 51–52.

We next assess whether the $3,500 punitive damages award is constitutionally excessive. Under the framework outlined in *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559 (1996), a punitive damages award violates due process if it is "grossly excessive," such that "it furthers no legitimate purpose and constitutes an arbitrary deprivation of property." *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 417 (2003). The considerations informing our inquiry are the degree of reprehensibility of the defendant's conduct, the relationship between the harm inflicted and the amount of punitive damages awarded, and the existence and extent of sanctions for comparable misconduct. *Gore*, 517 U.S. at 575–85.

The first *Gore* factor—the degree of reprehensibility of the defendant's conduct—is "the most important indicium of the reasonableness of a punitive

damages award." 517 U.S. at 575.  To determine the degree to which conduct is reprehensible, the Supreme Court has instructed us to consider whether (1) the harm was physical or merely economic, (2) the conduct evinced a reckless disregard of the health or safety of others, (3) the target was vulnerable, (4) the conduct involved repeated actions or was an isolated incident, and (5) the harm was the result of intentional malice, trickery, or deceit. *State Farm*, 538 U.S. at 417–29.  Viewed in the light most favorable to the verdict, *see Lincoln v. Case*, 340 F.3d 283, 293 (5th Cir. 2003); *Payne v. Jones*, 711 F.3d 85, 99 n.10 (2d Cir. 2013), Trevino's actions implicate four of the five enumerated aggravating factors: Cooper's ribs were fractured and his elbow was dislocated; as a prisoner in Trevino's custody, Cooper was a vulnerable victim; as the jury found, Trevino applied force "maliciously and sadistically for the very purpose of causing harm"; and after the incident, Trevino returned Cooper directly to his cell without seeking medical treatment, and did not file a use-of-force report. *See Kunz v. DeFelice*, 538 F.3d 667, 679 (7th Cir. 2008) (finding conduct highly reprehensible in part because the defendant officer intentionally inflicted physical injuries on a vulnerable arrestee in his custody); *Bogle v. McClure*, 332 F.3d 1347, 1361 (11th Cir. 2003) (finding conduct highly reprehensible in part because it was accompanied by efforts to cover it up); *Gregory v. Shelby Cnty., Tenn.*, 220 F.3d 433, 445 (6th Cir. 2000) (finding conduct highly reprehensible in part because the defendant officer "knew the beating occurred and let [the plaintiff] suffer through the night with his injuries").  On the other hand, there were mitigating factors: this was an isolated incident, it was brief in duration, and Cooper had some role in precipitating it. *See Payne*, 711 F.3d at 101 (noting that officer's conduct, though reprehensible, "was provoked" and "lasted at most 30 seconds").  In light of the competing aggravating and mitigating considerations, the first *Gore* factor is inconclusive.

The probative value of the second *Gore* factor—the relationship between the harm and the punitive damages award—depends upon the character of the underlying injury and amount of the compensatory damages award. "When compensatory damages are substantial " and the monetary value of the harm is easily calculated, "an award of more than four times the amount of compensatory damages might be close to the line of constitutional impropriety." *State Farm*, 538 U.S. at 425–26. By contrast, "low awards of compensatory damages may properly support a higher ratio than high compensatory awards, if, for example, a particularly egregious act has resulted in only a small amount of economic damages." *Gore*, 517 U.S. at 582; *see also Williams v. Kaufman Cnty.*, 352 F.3d 994, 1016 (5th Cir. 2003) ("Because actions seeking vindication of constitutional rights are more likely to result only in nominal damages, strict proportionality would defeat the ability to award punitive damages at all."); *Lee v. Edwards*, 101 F.3d 805, 811 (2d Cir. 1996) ("In *Gore*, a 500 to 1 ratio was 'breathtaking.' However, in a § 1983 case in which the compensatory damages are nominal, a much higher ratio can be contemplated while maintaining normal respiration."). Here, the jury awarded only $30 in compensatory damages because, as Warden Barbosa testified, prisoners pay a $3 co-pay for visits to the medical department but are not otherwise charged for medical services rendered. Thus, because Cooper's economic damages are minimal and do not reflect the severity of the harm he suffered, the second *Gore* factor "tells us little of value in this case to help answer the question whether the punitive award was excessive." *Payne*, 711 F.3d at 103; *see also Williams*, 352 F.3d at 1016 (emphasizing that "any punitive damages-to-compensatory damages 'ratio analysis' cannot be applied effectively in cases where nominal damages have been awarded") (emphasis omitted); *Lincoln*, 340 F.3d at 294 (affirming punitive damages award, despite a 2000:1 ratio, because "[a] high ratio of punitives to compensatory damages is far less troubling in cases such as this one" involving minimal compensatory damages).

The third *Gore* factor is the existence and extent of state civil and criminal sanctions for comparable misconduct. If a state punishes comparable misconduct with minor civil penalties, then a much larger punitive damages award may be constitutionally excessive. *Gore*, 517 U.S. at 583–85. If, on the other hand, the punitive damages award is commensurate with civil and criminal sanctions for comparable misconduct, it is more likely to fall within constitutional limits. *See Kunz*, 538 F.3d at 679–80. Under Texas law, assault with the intent to cause bodily injury to another is a Class A misdemeanor punishable by a criminal fine of up to $4,000 and up to one year of imprisonment. *See* TEX. PENAL CODE §§ 22.01(a)(1), 12.21. Although this sanction is commensurate with the $3,500 punitive damages award—a relevant consideration—the equivalence is less probative than it otherwise would be because it is criminal, not civil, in nature. *Compare Abner v. Kansas City S. R.R. Co.*, 513 F.3d 154, 164 (5th Cir. 2008) (finding dispositive that the punitive damages award fell within a civil statutory punitive damages cap), *with State Farm*, 538 U.S. at 428 (explaining that although "the existence of a criminal penalty does have bearing on the seriousness with which a State views the wrongful action," it is of "less utility" in determining the dollar amount of the award), *and Payne*, 711 F.3d at 103 ("The fact that New York classes [the defendant]'s conduct as warranting criminal prosecution tends to confirm the appropriateness of the imposition of a punitive award. However, it tells little about the appropriateness of the amount of the award.").

Examined together, none of the three *Gore* factors weighs strongly for or against finding the punitive damages award constitutionally excessive. Cooper's injury was physical and serious, but not life-threatening; the jury found that Trevino's conduct was malicious, but it was not unprovoked; the ratio between the harm to Cooper and the punitive damages awarded is high, but not unreasonably so in light of the minimal economic damages; and the $3,500 award

is at the high end of, but not out of proportion to, the Texas criminal sanction for comparable misconduct. With the *Gore* factors in equipoise, we look to punitive damages rulings in factually similar cases. *See Williams*, 352 F.3d at 1016 n.78 (surveying punitive damages awards in strip-search cases from other circuits); *Payne*, 711 F.3d at 104 ("Courts have often found it helpful in deciding whether a particular punitive award is excessive to compare it to court rulings on the same question in other cases.").

Of the "relatively few other cases addressing the amount of punitive damages awarded in the context of civil rights actions," *Williams*, 352 F.3d at 1016 n.78, and the still-smaller subset of excessive-force cases, we find instructive the recent and factually similar *Payne* decision. The underlying assault in *Payne*, which the court found "reprehensible" but not to an unusually high degree, had aggravating and mitigating factors: on the one hand, the officer verbally provoked the attack by taunting the arrestee, the arrestee was mentally ill, and the officer had a history of excessive force violations; on the other hand, the attack "lasted at most 30 seconds, did not involve use of a weapon, and did not cause any serious physical injuries." 711 F.3d at 101. The second and third *Gore* factors, the court determined, were also inconclusive. *Id.* at 102–04. The court then conducted an exhaustive survey of punitive damages awards in excessive-force cases, noting that it had upheld awards as high as $175,000 and remitted awards as low as $75,000 under similar circumstances. *Id.* at 104–06. Using precedent and the *Gore* factors as guideposts, the court concluded that "the highest level of punitive damages that can properly be sustained [under the circumstances] is $100,000." *Id.* at 106.

Our own decision in *Williams*, though it did not involve excessive force or physical injury, is similarly instructive. In upholding a $15,000 punitive damages award for an unlawful strip search, we opined that in cases involving only non-economic damages, a $10,000 punitive damages award is the lowest

award that "approaches the limits of what we would deem consistent with constitutional constraints." 352 F.3d at 1016 n.78 (quoting *Provost v. City of Newburgh*, 262 F.3d 146, 164 (2d Cir. 2001)).  Consistent with that estimation, Trevino does not identify, nor could we find, a case in which a court under similar factual circumstances found constitutionally excessive a punitive damages award as low as $3,500.

Taking into consideration all of the foregoing factors, we conclude that the $3,500 punitive damages award is not constitutionally excessive.  Although we might have awarded no punitive damages in so close a case, or settled on a different amount, we cannot say that the jury's award "furthers no legitimate purpose and constitutes an arbitrary deprivation of property." *State Farm*, 538 U.S. at 417.

## V.

For the foregoing reasons, we reverse the JMOL and the conditional grant of a new trial and reinstate the jury verdict.  The case is remanded to the district court for the entry of judgment in favor of Cooper.

REVERSED and
REMANDED for entry of judgment.

No. 10-50771

E. GRADY JOLLY, Circuit Judge, dissenting:

I respectfully dissent. I would affirm the district court's JMOL setting aside the jury verdict. Furthermore, I respectfully dissent from the affirmance of punitive damages. There is nothing more here than, at most an excessive force violation of the Eighth Amendment. There is no evidence to support punitive damages beyond the evidence that supports the bare Eighth Amendment claim. Finally, I respectfully dissent from the affirmance of an award 117 times greater than actual damages.